IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **GE CAPITAL COMMERCIAL INC.** and | § | |
| **GE CAPITAL FINANCIAL INC.,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:09-CV-572-L** |
| | § | |
| **WRIGHT AND WRIGHT INC.,** | § | |
| **BBAF ENTERPRISES INC.,** | § | |
| **JUSTIN PRATHER**, and **DAVID ASHLEY** | § | |
| **WRIGHT**, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION
## AND ORDER GRANTING PRELIMINARY INJUNCTION

Before the court are Plaintiffs' Application for Preliminary Injunction, filed April 9, 2009;

the Motion to Clarify, Modify, or Alternatively, to Dissolve the Temporary Restraining Order, filed

April 15, 2009; the Motion to Dissolve or Modify Temporary Restraining Order and Deny Plaintiffs'

Application for Preliminary Injunction as to Movants, filed April 17, 2009; the Motion to Dissolve

or Modify Temporary Restraining Order and Deny Plaintiffs' Application for Preliminary Injunction

as to Movants, filed April 23, 2009, and the First Amended Motion to Dissolve or Modify

Temporary Restraining Order and Deny Plaintiffs' Application for Preliminary Injunction as to

Movants, filed April 23, 2009.  The court determined that a hearing was necessary to assist in the

resolution of these matters, and on April 24, 2009, the court held a hearing on the motions.

After careful consideration of the motions, briefs, responses, replies, appendices, record,

evidence and argument at the hearing, and applicable law, the court **dissolves** the temporary

restraining order; **grants** Plaintiffs' Application for Preliminary Injunction against Defendant Justin

Prather ("Prather"); **denies** Plaintiffs' Application for Preliminary Injunction against all other Defendants; **denies as moot** the Motion to Clarify, Modify, or Alternatively, to Dissolve the Temporary Restraining Order, filed April 15, 2009; **denies as moot** the Motion to Dissolve or Modify Temporary Restraining Order and Deny Plaintiffs' Application for Preliminary Injunction as to Movants, filed April 17, 2009; **denies as moot** the Motion to Dissolve or Modify Temporary Restraining Order and Deny Plaintiffs' Application for Preliminary Injunction as to Movants, filed April 23, 2009, and **denies as moot** the First Amended Motion to Dissolve or Modify Temporary Restraining Order and Deny Plaintiffs' Application for Preliminary Injunction as to Movants.

## I.     Factual and Procedural Background[1]

Prather, a former senior vice president of Plaintiffs GE Capital Commercial, Inc. and GE Capital Financial, Inc. (collectively, "Plaintiffs"), orchestrated three separate schemes.  The first scheme was the Securities Investment Scheme.  Beginning around 2004, Prather solicited money from investors and told them that he had unique access to certain investments through Corbin Matthews, a purported employee of Lehman Brothers, Inc.  Most of the parties contend that Corbin Matthews is fictional.  The participants in this scheme gave money to Prather, who promised substantial profits in two to three months.  Some participants even reinvested the "profits" they earned.  Prather manufactured investment documents to provide to these investors.

The second scheme was the Construction Equipment Scheme.  This scheme was built upon the premise that Prather could obtain "sweetheart deals" on construction equipment that Plaintiffs obtained through foreclosures and lease returns.  This premise is flawed, however, because Plaintiffs

---

[1]These facts are based on those established as of April 24, 2009, the date of the hearing on the preliminary injunction.

**Memorandum Opinion and Order Granting Preliminary Injunction- Page 2**

had an exclusive contract with an auction house, Ritchie Brothers Auctioneers, Inc., to liquidate its used construction equipment. Under the scheme, Prather allegedly obtained buyers for the equipment, but needed bridge financing to acquire the equipment from Plaintiffs before it could be resold to the buyers. Participants in this scheme were asked to loan money to Prather for the purchase of the equipment. They were promised high, fixed, short-term returns on their investment.

The third scheme was the Golf Car Scheme. Plaintiffs believe that Prather began this scheme to fund the other schemes. Plaintiffs financed golf cars for certain golf car dealers (Prather used the names of four of these dealers in his scheme). Under the scheme, Prather forged documents that reflected that Defendants Wright & Wright, Inc. ("Wright & Wright") and BBAF Enterprises, Inc. ("BBAF") sold golf cars to four dealers for which Plaintiffs provided financing. Each of the four dealers stated that they never made such purchases. Based on the forged documents, Plaintiffs transferred money to two accounts belonging to Wright & Wright and one account belonging to BBAF. There were twenty-three such transactions between July 3, 2008, and January 21, 2009. Within hours of receiving the wire transfer, the money was transferred to other accounts, some of which were owned by Prather, Defendant David Ashley Wright ("Wright"), and Defendant Frank Buchanan ("Buchanan").

## II.    Legal Standard– Motion for Preliminary Injunction

There are four prerequisites for the extraordinary relief of a preliminary injunction. To prevail, a plaintiff must demonstrate: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (iii) greater injury will result from denying the preliminary injunction than from granting it; and (iv) granting a preliminary injunction will not disserve the public interest. *Clark v. Prichard*, 812 F.2d

991, 993 (5th Cir. 1987); *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a preliminary injunction can be granted.   *Mississippi Power and Light Co. v. United Gas Pipeline,* 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993.  Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the preliminary injunction.

### III.    Discussion

To prevail on their application for a preliminary injunction, Plaintiffs must establish each of the required elements herein set forth.  The court addresses each element in turn.

### A.    Substantial likelihood of success on the merits

To prevail on their application for a preliminary injunction, Plaintiffs must first demonstrate a substantial likelihood of success on the merits.  In their briefs and at the hearing, Plaintiffs primarily focused on two causes of action – money had and received and violations of the Texas Uniform Fraudulent Transfers Act ("TUFTA"), Tex.  Bus. & Comm. Code § 24.005 (Vernon 2005). Texas courts summarize the money had and receive cause of action as follows:

> The courts describe this claim in general principles.  For example, courts have stated that a claim for money had and received seeks to restore money where equity and good conscience require restitution; it is not premised on wrongdoing, but seeks to determine to which party, in equity, justice, and law, the money belongs, and it seeks to prevent unconscionable loss to the payor and unjust enrichment to the payee.  As these broad and general descriptions demonstrate, a cause of action for money had and received is less restricted and fettered by technical rules and formalities than any other form of action.  It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which belongs to the plaintiff.  ***To prove the claim, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him.***  A defendant may present any facts or

> raise any defenses that would deny a claimant's right to recover under this theory.

*Edwards v. Mid-Continent Office Distributors, L.P.*, 252 S.W.3d 833, 837 (Tex. App.– Dallas 2008, pet. denied) (internal quotations and citations omitted) (emphasis added).   TUFTA prohibits transfers made with the actual intent of hindering, delaying, or defrauding a creditor.   Tex. Bus. & Comm. Code § 24.005(a)(1).   TUFTA also prohibits transfers made without receiving a reasonably equivalent value in exchange if the debtor meets either of the following criteria:

> was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or [] intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

*Id.* § 24.005(a)(2).

With respect to their money had and received claim, Plaintiffs presented evidence that Prather falsified documentation that caused them to transfer $12.5 million to accounts owned by Wright & Wright and BBAF and instructed these entities to transfer the funds to various investors in Prather's Ponzi schemes.   Plaintiffs also presented evidence that as a result of Prather's instructions, approximately $7.1 million of the $12.5 million at issue was transferred to accounts owned by Prather.   Because Prather invoked his Fifth Amendment rights when questioned about these transfers during his deposition, the court may draw an adverse inference against him.   "[I]t is well-settled that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Hinojosa v. Butler*, 547 F.3d 285, 291 (5th Cir. 2008).   Based on the evidence submitted by Plaintiffs

in support of their application for a preliminary injunction, the testimony of Mr. John Wills during the hearing, and adverse inferences drawn against Prather, the court determines that there is a substantial likelihood of success on the merits on Plaintiffs' money had and received claim against Defendant Prather.     The evidence, however, is not as strong against the remaining defendants. Plaintiffs contend that Wright & Wright, BBAF, Wright, and Buchanan ("Remaining Defendants") are liable because they assisted Prather in his schemes by recruiting new participants, granting Prather access to their corporate bank accounts, and allowing Prather to use their corporations to commit fraud.   That  Remaining Defendants may have been foolish, negligent, or even grossly negligent in their dealings with Prather is insufficient to establish that they were a party to the fraud. At best, Plaintiffs' evidence establishes that Remaining Defendants *may have been* complicit in Prather's fraud.  Although this evidence is sufficient to establish *some* likelihood of success on the merits of Plaintiffs' money had and received claim against Remaining Defendants, a mere likelihood is insufficient to meet the required burden.   Plaintiffs are required to establish a *substantial* likelihood of success on the merits, and the court is not convinced that they have met their burden as to Remaining Defendants .

With respect to their fraudulent transfer claim, Plaintiffs presented evidence that, in furtherance of his Ponzi schemes, Prather instructed Remaining Defendants to transfer the $12.5 million at issue to various "investors" and that Remaining Defendants complied with Prather's requests.  They contend that "transfers made from a Ponzi scheme are presumptively made with intent to defraud, because a Ponzi scheme is, as a matter of law, insolvent from inception." *Quilling v. Schonsky*, 247 Fed. Appx. 583, 586 (5th Cir. 2007) (quoting *Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006).  To oppose the fraudulent transfer claims, Prather and Remaining Defendants

(collectively, "Defendants") must demonstrate that they received the funds in good faith and for a reasonably equivalent value. Tex. Bus. & Comm. Code § 24.009(a). Prather did not oppose the entry of a preliminary injunction against him. Remaining Defendants presented evidence that Prather falsified documents and made misrepresentations to them concerning his various schemes. Because Plaintiffs fell victim to the same conduct by Prather, the court determines that Remaining Defendants received the funds in good faith. Remaining Defendants, however, failed to present evidence that they received the funds for reasonably equivalent value. Although counsel for Remaining Defendants made the argument, Remaining Defendants provided no proof to substantiate such assertions. Therefore, the court determines that there is a substantial likelihood of success on the merits on Plaintiffs TUFTA claim against Defendants.

### B.    Substantial threat of immediate and irreparable harm

To prevail on their application for a preliminary injunction, Plaintiffs must also demonstrate a substantial threat of immediate and irreparable harm for which they have no adequate remedy at law. Plaintiffs contend that Defendants are unable to respond in damages because they are presumed insolvent because they operated Ponzi schemes. This presumption, however, only applies to Prather-the operator of the Ponzi scheme. *See Quilling*, 247 Fed. Appx. at 586. Plaintiffs presented no evidence that Remaining Defendants are unable to respond in damages. Moreover, during a hearing conducted by the court via telephone on April 3, 2009, with counsel for Plaintiffs and Remaining Defendants, certain defendants offered to borrow $12.5 million and deposit the funds into the registry of the court if Plaintiffs would agree to dissolve the temporary restraining order. Plaintiffs expressly refused because of their concerns that other victims may claim entitlement to the funds. To the extent that Plaintiffs' harm is immediate and irreparable to any Defendant except

Prather, it is so because of Plaintiffs' denial of the offer to deposit the funds into the registry of the court and not because of the initial funds transfers, which occurred between July 2008 and January 2009.[2] Accordingly, Plaintiffs establish this elements as to Prather, but fail to establish this elements as to Remaining Defendants.

### C.      Greater injury will result from denying the preliminary injunction

To prevail on their application for a preliminary injunction, Plaintiffs must further demonstrate that a greater injury will result from denying the preliminary injunction than from granting it. All parties agree that Prather is behind the fraudulent conduct in this case. Because he does not oppose the entry of a preliminary injunction against him, Prather acknowledges this point. Remaining Defendants argue that they are additional victims of Prather's schemes. As previously stated, Plaintiffs fail to establish that Remaining Defendants were complicit in the fraud. Accordingly, the court determines that as between Remaining Defendants and Plaintiffs, greater injury will result from issuing the preliminary injunction. Plaintiffs' financial resources are such that the court waived the bond requirement when it entered and extended the temporary restraining order in this case. On the other hand, the temporary restraining order froze all personal and operating accounts for the small businesses conducted by Remaining Defendants. Remaining Defendants are, in essence, unable to conduct business because of the temporary retraining order. Moreover, no funds at issue in this case, except for $1000, remain in any account controlled by BBAF or Buchanan. Accordingly, greater injury will result from issuing the preliminary injunction, except as to Defendant Prather.

_____

[2]Hindsight reflects that at the time the court granted the temporary restraining order on March 27, 2009, Plaintiffs had already suffered the injury resulting from Prather's fraudulent conduct.

**D.**     **Granting preliminary injunction will not disserve the public interest**

Finally, to prevail on their application for a preliminary injunction, Plaintiffs must demonstrate that granting a preliminary injunction will not disserve the public interest.  Plaintiffs contend that "[i]t is in the public interest to 'protect against fraud and to make victims of fraud whole, while preventing wrongdoers from benefiting from their deceit.'"  Pls.' Br. 14 (quoting *SEC v. Asset Recovery & Mgmt. Trust*, 340 F. Supp. 2d 1305, 1311 (M.D. Ala. 2004)).  For the reasons previously stated, this interest applies only to Prather.  Therefore, the court determines that a preliminary injunction will disserve the public interest, except as to Defendant Prather.

**IV.     Conclusion and Preliminary Injunction**

For the reasons stated herein and on the record in open court, the court determines that Plaintiffs fail to establish each element necessary to obtain a preliminary injunction against Remaining Defendants.  Accordingly, the court **denies** Plaintiffs' Application for Preliminary Injunction against Remaining Defendants; **denies as moot** the Motion to Clarify, Modify, or Alternatively, to Dissolve the Temporary Restraining Order, filed April 15, 2009; **denies as moot** the Motion to Dissolve or Modify Temporary Restraining Order and Deny Plaintiffs' Application for Preliminary Injunction as to Movants, filed April 17, 2009; **denies as moot** the Motion to Dissolve or Modify Temporary Restraining Order and Deny Plaintiffs' Application for Preliminary Injunction as to Movants, filed April 23, 2009, and **denies as moot** the First Amended Motion to Dissolve or Modify Temporary Restraining Order and Deny Plaintiffs' Application for Preliminary Injunction as to Movants.

For the reasons stated herein and on the record in open court, the court **determines** that Plaintiffs have established each element necessary to obtain a preliminary injunction against

Defendant Justin Prather and **grants** Plaintiffs' Application for Preliminary Injunction against Defendant Justin Prather.  Accordingly, **it is hereby ordered** that Defendant Justin Prather, either directly or indirectly, for himself, or through, on behalf of, or in conjunction with any person, persons, officers, agents, servants, employees, attorneys, or any other entity acting in concert with them, is **preliminarily enjoined** from gaining or having access to, transferring, moving, depleting, hiding, pledging, spending, using, or secreting assets in any bank, investment or other accounts into which funds from bank accounts, identified as Account #6009676 at Worthington National Bank; Account #2011004515 at Sterling Bank; and Account #3800000238 at Plains Capital Bank flowed, including, but not limited to accounts held at Worthington National Bank, Sterling Bank, Plains Capital Bank, First National Bank of Linden, Texana Bank, Regions Bank, Citizens National Bank, The Independent Bankers' Bank, and TD Ameritrade.

**It is further ordered** that notwithstanding any contrary terms of this order, Defendant Justin Prather may withdraw no more than $5,000 per month from any account or combination of accounts for basic living expenses and necessities, subject to further order of the court.  The court will modify this amount only if it is convinced that this amount is insufficient to meet basic living expenses and necessities for Prather and his family;

**It is further ordered** that Defendant Justin Prather shall not sell any asset, tangible or intangible, in which he has any interest that has a value of $500 or more without written leave of the court.

**It is further ordered** that bond is not required because Plaintiffs have the financial capability to cover any damages that Prather may suffer by issuance of this preliminary injunction.

**It is so ordered** this 28th day of April, 2009.

Sam A. Lindsay
United States District Judge