IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **GE CAPITAL COMMERCIAL, INC.,** | § | |
| **GENERAL ELECTRIC CAPITAL** | § | |
| **CORPORATION,** and **GE CAPITAL** | § | |
| **FINANCIAL, INC.,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:09-CV-572-L** |
| | § | |
| **WRIGHT & WRIGHT, INC.,** | § | |
| **BBAF ENTERPRISES, INC.,** | § | |
| **DAVID ASHLEY WRIGHT,** | § | |
| **FRANK BOYD BUCHANAN, III,** | § | |
| **WORTHINGTON NATIONAL BANK,** | § | |
| **PLAINSCAPITAL BANK,** | § | |
| and **STERLING BANK,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are: (1) Defendant Worthington National Bank's Motion to Dismiss for Failure to State a Claim Under Which Relief Can Be Granted, filed July 21, 2009; (2) PlainsCapital Bank's Fed. R. Civ. P. 12(b)(6) and 9(b) Motions to Dismiss and, Alternatively, Fed. R. Civ. P. 12(e) Motion for More Definite Statement, filed July 22, 2009; and (3) Defendant Sterling Bank's Motion to Dismiss for Plaintiffs' Failure to State a Claim and, Alternatively, Motion for More Definite Statement, filed July 27, 2009 (collectively, the "Motions").  After consideration of the Motions, responses, replies, briefs, record, and applicable law, the court **grants in part** and **denies in part** each of the three Motions.

## I.      Factual and Procedural Background

Plaintiffs GE Capital Commercial, Inc., General Electric Capital Corporation, and GE Capital Financial, Inc. (collectively, "GECC" or "Plaintiffs") filed their Original Complaint and Application for Preliminary and Permanent Injunction in this court on March 27, 2009, showing that complete diversity of citizenship existed between the parties and the amount in controversy exceeded $75,000, exclusive of interest and costs.   Plaintiffs filed their Amended Complaint on April 9, 2009, alleging multiple claims against Defendants and requesting relief of damages, attorney's fees, costs, a permanent injunction, and a writ of attachment.

This action arises out of a series of alleged fraudulent schemes resulting in the alleged conversion of over $12,500,000 from GECC.   Plaintiffs contend that, in 2004, Justin Prather ("Prather") entered into a scheme with Defendant David Ashley Wright ("Wright") and Defendant Frank Boyd Buchanan, III ("Buchanan") involving the purchase and sale of heavy construction equipment.  Both Wright and Buchanan allegedly, after being promised an improbable and high rate of return by Prather, orally agreed to invest millions of dollars into the scheme, turned over control of their bank accounts to Prather, created new accounts and business entities with Prather, and sought outside investors to finance the heavy equipment purchases.

Wright allegedly maintained bank accounts with Defendant Sterling Bank ("Sterling") in his own name and in the name of Wright & Wright, Inc. (Defendant "Wright & Wright"), a company of which Wright was the sole member and owner by 2003.  Buchanan allegedly maintained a bank account with Defendant PlainsCapital Bank ("PlainsCapital") in the name of BBAF Enterprises, Inc. (Defendant "BBAF"), a company incorporated by Buchanan in 2006.   In 2007, Prather and Wright allegedly opened a bank account together at Defendant Worthington Bank ("Worthington") and, in connection therewith, sought and obtained a $2,500,000 line of credit from Worthington.

GECC contends that the Worthington line of credit, ostensibly acquired for the purpose of purchasing heavy equipment, was never used for that purpose.  By June 2008, Prather and Wright still owed Worthington $2,470,000 to satisfy the bank's demand for repayment of the loan, and had nothing to show from their alleged heavy equipment scheme.  During the same time period, Prather also allegedly acquired a $3,500,000 loan from PlainsCapital.  The terms of the PlainsCapital loan required Prather to maintain certain accounts at PlainsCapital with a minimum average monthly balance reaching into the range of hundreds of thousands of dollars; Prather allegedly could not independently meet these obligations.

As a result of Worthington's loan repayment demand, and due to the necessity to maintain high value accounts with PlainsCapital, Prather allegedly engineered a new scheme to steal money to pay off his debt.  In late June or early July 2008, Prather's employer, CitiCapital Commercial Corporation ("Citi"), operated a credit extension program that financed the purchase of golf cars and Prather was the manager of this program.  Prather allegedly used his status as manager to beguile Citi into wiring money directly into the bank accounts of BBAF and Wright & Wright by falsely indicating that those two companies were golf car "distributors."  During July 2008, Prather allegedly wired almost $7,500,000 to Wright & Wright's bank account, and used $2,470,000 of that money to repay Worthington.  In early August 2008, GECC underwent a merger and acquired Citi; all the while Prather continued perpetuating his scheme.  Prather allegedly created fabricated invoices, false e-mails, fraudulent promissory notes, and fictitious GECC employees to protect his scheme, causing GECC to wire over $5,000,000 more to BBAF and Wright & Wright between August 2008 and January 2009.

Once the combined $12,500,000 allegedly stolen through Prather's scheme was deposited into BBAF's or Wright & Wright's bank accounts by Citi and GECC, Prather, Buchanan, or Wright

**Memorandum Opinion and Order – Page 3**

would allegedly wire those funds to other bank accounts.  These bank accounts included Buchanan's personal account at PlainsCapital, Wright's personal account at Sterling, and Prather's personal accounts.  Worthington allegedly grew suspicious of Prather and Wright's financial dealings with their supposed "investors," but declined to investigate the suspicious transactions, instead electing to close Prather and Wright's bank accounts.  PlainsCapital, and Sterling also allegedly had these same suspicions but made no investigation and did not close the accounts.

Prather allegedly used many of the fraudulently acquired funds to maintain the minimum required account balances at PlainsCapital to maintain his $3,500,000 loan.  In March 2009, however, Prather ultimately defaulted on this loan and PlainsCapital then allegedly seized over $525,000 from Prather's other bank accounts.  GECC brings causes of action against all Defendants, and specifically alleges that Worthington, Sterling, and PlainsCapital are still in possession of funds that were fraudulently acquired by Prather and deposited at each bank.

## II.     Standard for Dismissal Pursuant to Rule 12(b)(6)

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950 (citation omitted).  Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).  The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has

**Memorandum Opinion and Order – Page 5**

pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

## III.   <u>Analysis</u>

The Motions raise similar arguments, and the court determines that Worthington, PlainsCapital, and Sterling (collectively, "Moving Defendants") are similarly situated.  Moving Defendants are all financial institutions defending against the same set of claims: (1) money had and received; (2) fraudulent transfer; (3) conversion; (4) permanent injunction; and (5) constructive trust. Accordingly, the court will consider the Motions and their corresponding arguments together.

### A.   **Federal Preemption**

PlainsCapital argues that all of GECC's claims are preempted by federal law because the wire transactions at the subject of GECC's claims occurred through Fedwire.  Specifically, PlainsCapital contends that the federal government, under Regulation J, has delineated an exclusive standard of care for such claims.  Regulation J is a lengthy code generally governing federal wire transfers.  Given its extensive length, and given the court's ultimate determination that the regulation does not apply to GECC's claims, the court finds it unnecessary to quote the regulation in its entirety and will discuss it only to the extent necessary.  Moreover, the parties did not quote Regulation J directly in their briefing, and instead relied on relevant case law that interprets the regulation.  The court will do the same.

Because GECC's claims are rooted in common law, PlainsCapital contends that the claims are preempted, as they either conflict with or are duplicative of the Regulation J federal standard. In response, GECC argues that PlainsCapital misunderstands and misapplies the federal law, contending that Regulation  J only preempts claims that challenge the wire transfers *themselves*.

Here, GECC urges that the wire transfers were only *incidental* to the conduct alleged in its claims, and that the preemptive effect of Regulation J therefore does not apply. The court agrees.

As this is a matter that the Fifth Circuit has not decided, PlainsCapital relies on a Fourth Circuit case for principal authority. Although PlainsCapital argues that the case supports preemption here under Regulation J, the Fourth Circuit's holding in that case actually supports the notion that preemption does *not* apply here. In that case, the plaintiff brought negligence claims, arising out of a fraudulently induced wire transfer, against Wachovia Bank. *Eisenberg v. Wachovia Bank, N.A.*, 320 F.3d 220, 222 (4th Cir. 2002). Specifically, the plaintiff alleged that the bank negligently allowed one of its customers to operate a fraudulent bank account and negligently failed to train its employees to detect fraud. *Id.* The court ultimately determined that the plaintiff's "negligence claims are preempted *insofar as they challenge Wachovia's Fedwire transfer processing.*" *Id.* at 223 (emphasis added). The court went on to determine that the Fedwire transfer was only incidental to the negligence claims. *Id.* In other words, the "allegations of negligence [were] not limited to Wachovia's conduct in processing the Fedwire transfer order." *Id.* The Fourth Circuit concluded that Regulation J only preempts claims that are otherwise covered by Subpart B, which governs only Fedwire funds transfers. *Id.* at 224. Subpart B defines these transfers as "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." Comm. to Secs. 4A-102 & 4A-104, 12 C.F.R. Part 210, Subpt. B, App. B (2002). Subpart B does not address the duties, obligations and liabilities applicable to bank functions having nothing to do with Fedwire transfer. *Eisenberg,* 320 F.3d at 224.

While this court is not bound by the Fourth Circuit's reasoning in *Eisenberg*, the court nevertheless finds that case to be persuasive and determines that GECC's claims against Moving Defendants are not preempted. While it is true that money was transferred to and from the bank

accounts via Fedwire, such transfers were only incidental to the claims alleged.  GECC's claim of fraudulent transfer, for example, alleges that Moving Defendants acted in bad faith or with willful ignorance in receiving the transfers, which goes beyond challenging merely the Fedwire fund processing itself.  GECC's additional claims of conversion and money had and received challenge the money holdings of Moving Defendants, alleging that their right to possess or retain the money is subordinate to GECC's.  It is apparent to the court that Plaintiffs' contention is not with the wire transfers, but rather with the money holdings of Moving Defendants.  Indeed, GECC seems to acknowledge that the wire transfers themselves were valid and nondefective.

The court determines that to interpret Regulation J as preempting GECC's claims here would be contrary to Supreme Court admonishment that a court should not interpret a statute or regulation in such a way that would produce "absurd results."  *See Dewsnup v. Timm*,  502 U.S. 410, 427 (1992).  GECC alleges that Moving Defendants acted in bad faith or with willful ignorance in accepting a fraudulent transfer.  GECC further alleges that Moving Defendants were "suspicious" of the transfers, suggesting that they should have been aware that something about the transfers was wrong.  Interpreting Regulation J in a manner that would allow a beneficiary bank to accept funds when it had suspicion that such funds were fraudulently obtained would allow banks to use Regulation J as a shield for fraudulent activity.  *See Regions Bank v. The Provident Bank, Inc.*, 345 F.3d 1267, 1276 (11th Cir. 2003).  If GECC's claims challenged only the wire transfer, or had alleged that the wire transfers themselves were deficient in some way, the court would agree that Subpart B of Regulation J preempts.  The situation in this case, however, is different; the court accordingly determines that GECC's claims are not preempted by Regulation J.

### B.      Money Had and Received Claim

GECC brings a claim for money had and received against Moving Defendants.  To bring such a claim, a plaintiff must establish that "the defendant held money which in equity and good conscience belonged to the plaintiff."  *Bank of Saipon v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (citation omitted).  Here, Moving Defendants argue that GECC's claim is not well-pled, contending that GECC must also allege a lack of good faith or, as Sterling argues, that the claim is not supported by sufficient facts to show unjust enrichment.  Worthington further contends that it does not "hold" any funds that belonged to GECC because it closed the bank accounts of alleged fraudulent perpetrators Prather and Wright.  PlainsCapital relies upon an affirmative defense that it contends GECC establishes on the face of the complaint: PlainsCapital received the funds in question in the ordinary course of business in good faith and for value.  The court finds these arguments unpersuasive.

Moving Defendants essentially take the position that, because Plaintiffs have not specifically alleged "bad faith" in their complaint, good faith can be presumed.  PlainsCapital's reply in support of its motion to dismiss phrases this argument best: "[T]hrough omission of the necessary allegations, Plaintiffs tacitly admit that the funds were swept in good faith and for valuable consideration, thereby disposing of their money had and received claim." D.'s Reply at 2.  The court first determines that good faith is not a necessary element of the claim pleaded, but rather goes to the issue of affirmative defense.  *See Bank of Saipon*, 380 F.3d at 840 (listing the elements a plaintiff must establish to set forth the *prima facie* case of a money had and received claim).  Accordingly, GECC did not have to plead a lack of good faith to establish a cognizable claim for money had and received.  Second, as to Moving Defendants' argument that the complaint on its face establishes such affirmative defense, the court declines to draw a tacit inference that would dispose  of an

otherwise well-pled claim on a Rule 12(b)(6) motion.  Reviewing the alleged facts pleaded in the complaint in the light most favorable to Plaintiffs, the court determines that such an affirmative defense has *not* been conclusively established.  That it would require a tacit inference from the court to establish such an affirmative defense only serves as testament to the court's determination here; the court cannot view this claim in the light most *unfavorable* to Plaintiffs.  *See Sonnier*, 509 F.3d at 675.

Worthington contends that it does not possess any of the funds in question because it shut down the bank accounts of Prather and Wright.  Even though such bank accounts may have been closed, GECC's complaint makes clear that Prather and Wright allegedly paid Worthington $2,470,000 from fraudulently obtained funds.  The court finds at this stage that it is an insufficient defense that those bank accounts were since closed after having already received the funds in question.

Sterling argues that GECC must show unjust enrichment to bring a claim for money had and received.  The elements required for a money had and received claim, however, are silent as to a showing of unjust enrichment. While Sterling is correct in that the driving principle of a money had and received claim is to prevent unjust enrichment, the court determines that a showing of unjust enrichment is unnecessary for a plaintiff to make a proper pleading.  The court finds that unjust enrichment is implicit within a money had and received claim; it ordinarily follows that if a defendant possesses funds that are rightfully owned by a plaintiff, then the defendant is unjustly enriched at the plaintiff's expense.  For these reasons, the court denies Moving Defendants' Motions with respect to GECC's money had and received claim.

**Memorandum Opinion and Order – Page 10**

### C.      Fraudulent Transfer Claim

GECC brings a claim for fraudulent transfer against Moving Defendants, alleging a violation of the Texas Uniform Fraudulent Transfer Act ("TUFTA" or the "Act").   Under TUFTA, after a fraudulent transfer has occurred, a creditor is entitled to judgment against the first transferee of the asset or the person for whose benefit the transfer was made; or any subsequent transferee other than a good faith transferee who took for value.   Tex. Bus. & Com. Code Ann. § 24.009(b)(1)-(2) (Vernon 2009).   A transfer is fraudulent if the debtor made the transfer with the actual intent to hinder, delay, or defraud the creditor.   *Id.* § 24.005(a)(1).   Here, GECC alleges that it was a creditor of Prather, Buchanan, Wright, BBAF, and Wright & Wright (all of whom collectively were debtors), who transferred fraudulently obtained funds to Moving Defendants with the intent to defraud GECC. Moving Defendants argue that they took the funds in good faith and for reasonably equivalent value, that no "transfer" actually occurred, and that they do not qualify as "transferees" under the Act.

With respect to GECC's fraudulent transfer claim against Worthington, there are two types of "transfers" that could qualify.   The first type of transfer consists of the deposits made into the Worthington bank accounts held by Prather and Wright.   The second type of transfer is the $2,470,000 amount repaid to Worthington by Prather in satisfaction of a loan.   TUFTA does not define the term "transferee," but the Fifth Circuit sets forth a dominion or control test, categorizing a transferee as one that is entitled to exercise legal dominion and control over funds, to put the money to one's own use.   *Matter of Coutee*, 984 F.2d 138, 141 (5th Cir. 1993) (discussing *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988)).   In light of this test, the court does not believe that mere deposits into a bank account can rise to the level of "dominion and control."   Finding the Fifth Circuit's discussion of the Seventh Circuit analysis to be well taken, the court concludes that Worthington, with respect to the bank accounts held by Prather and Wright,

acted only as a financial intermediary, not a "transferee," because it was not free to put these funds to its own use. *See Bonded*, 838 F.2d at 893. As "dominion and control" means *legal* dominion or control, that Worthington could have violated its fiduciary obligation with respect to the bank accounts by spending the money however it pleased makes no difference in this analysis. *Matter of Coutee*, 984 F.2d at 141, n.4. The court determines that Worthington received no benefit from the bank account deposits; it simply followed deposit instructions and, in this instance, it was no different from a courier or an intermediary on a wire transfer. *Bonded*, 838 F.2d at 893. Although GECC properly alleges that Worthington was the recipient of these funds, Worthington's receipt of the bank deposits, without more, cannot subject Worthington to fraudulent transfer liability. Simply stated, Worthington was not a "transferee" under the Act.

As to the second type of transfer, however, regarding the $2,470,000 loan repayment, the court finds that Worthington does qualify as a "transferee." It is undisputed that alleged fraudulently obtained funds were transferred to Worthington outside of the context of a bank deposit. Worthington nevertheless contends that it is not liable under TUFTA because it argues that it acted in good faith and that the $2,470,000 amount was taken for reasonably equivalent value, serving as an affirmative defense to the transfer. GECC specifically alleges that Worthington acted in bad faith in the complaint, noting that Worthington grew "suspicious" of the wired funds, and even went as far as to close the bank accounts of Wright and Prather. Viewing theses allegations in the light most favorable to Plaintiffs, the court determines that bad faith has been sufficiently pled so as to dispel Worthington's argument that GECC has proved Worthington's affirmative defense on the face of the complaint. The court concludes that a showing of good faith and of reasonably equivalent value with respect to the $2,470,000 transfer should be raised in a motion for summary judgment or at trial, rather than by a motion to dismiss.

**Memorandum Opinion and Order – Page 12**

With respect to GECC's fraudulent transfer claim against PlainsCapital, there are again two types of "transfers" that could qualify. The first, again, consists of the deposits made into the PlainsCapital bank accounts held by Prather and Buchanan. The second type is the alleged $525,000 seizure by PlainsCapital from Prather's bank accounts as a consequence for his failure to maintain the required minimum account balance levels in satisfaction of a loan. Conducting the same analysis as in the preceding paragraphs, the court determines that, in the first type of transfer, PlainsCapital served only as a financial intermediary and recipient, not a "transferee." Thus, that other Defendants deposited allegedly fraudulent funds into PlainsCapital bank accounts does not give rise to a cause of action against PlainsCapital as a transferee under TUFTA.

As to the $525,000 seizure, however, the court determines that PlainsCapital does qualify as a transferee. Under TUFTA, a "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Tex. Bus. & Com. Code Ann. § 24.002(12) (Vernon 2009). The court turns specifically to the mention of the words "voluntary or involuntary" in this definition. Here, Prather involuntarily parted with assets from bank accounts that he held at PlainsCapital. The TUFTA definition is by its nature very broad, and the Fifth Circuit has adopted a similar understanding when construing exactly what a "transfer" entails. "The word [transfer] is used in its most comprehensive sense, and is intended to include every means and manner by which property can pass from the ownership and possession of another . . . ." *Matter of Besing*, 981 F.2d 1488, 1492 (5th Cir. 1993) (citation omitted).[1] A seizure is a manner by which funds can pass from the possession of one to another.

---

[1] Although *Besing* is a bankruptcy case, the court determines that "the Uniform Fraudulent Transfer Act and the United States Bankruptcy Code are of common ancestry; cases under one are considered

**Memorandum Opinion and Order – Page 13**

Accordingly, with respect to the $525,000 seizure here, the court determines that PlainsCapital is a "transferee." Notwithstanding this, however, PlainsCapital, like Worthington, argues the affirmative defense of good faith and reasonably equivalent value. To this end, PlainsCapital contends that good faith must be presumed because GECC does not allege that a secret agreement existed and supports this contention with Texas case law. Without discounting the merits of PlainsCapital's argument, the court cannot shift the burden of proving an affirmative defense to Plaintiffs within the context of a Rule 12(b)(6) motion. *See Flores v. Robinson Roofing & Const. Co.*, 161 S.W.3d 750, 756 (Tex. App.—Forth Worth 2005, pet. denied) ("The person who invokes this defense carries the burden of establishing good faith and the reasonable equivalence of the consideration exchanged.") (quoting comment 1 to the Uniform Fraudulent Transfer Act, which discusses the affirmative defense of good faith and reasonably equivalent value).[2] Whether a secret agreement existed or not is something that PlainsCapital must support with competent evidence on a motion for summary judgment or at trial. GECC has alleged bad faith on the part of Moving Defendants and has pled sufficient allegations that indicate a suspicion held by PlainsCapital which, when viewed in the light most favorable to Plaintiffs, establishes a claim under TUFTA that is plausible on its face.

With respect to GECC's fraudulent transfer claim against Sterling, there are no allegations in the complaint other than that Sterling received deposits in the Sterling bank account held by

---

authoritative under the other." *Williams v. Performance Diesel, Inc.*, No. 14-00-00063-CV, 2002 WL 596414, at *5 n.12 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citations omitted).

    [2]Moreover, the court would come to the same result under federal procedural law: the burden of proving an affirmative defense is on Moving Defendants, not Plaintiffs. *See* Fed. R. Civ. P. 8(c) (stating generally that a party responding to a pleading must affirmatively state an affirmative defense); *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (noting that a defendant bears the burden of proof when asserting an affirmative defense).

**Memorandum Opinion and Order – Page 14**

Wright.  Pursuant to its analysis in the preceding paragraphs, the court determines that mere deposits in a bank account cannot categorize Sterling as a "transferee" under TUFTA, because Sterling acted as nothing more than a financial intermediary and could exercise no legal dominion or control over the alleged fraudulently obtained funds.  Accordingly, the court dismisses GECC's fraudulent transfer claim against Sterling and further dismisses GECC's fraudulent transfer claims against Worthington and PlainsCapital to the extent that the fraudulent transfer claims challenge the deposits made into the Worthington and PlainsCapital bank accounts.

### D.      Conversion Claim

GECC brings a claim for conversion against Moving Defendants, contending that the alleged $12,500,000 obtained through Prather's scheme ended up in Worthington, PlainsCapital, and Sterling bank accounts.  To this end, GECC specifically alleges the elements of conversion of personal property.  In opposition, Worthington and PlainsCapital contend that GECC has alleged the wrong cause of action.  They contend that, because GECC seeks the recovery of monetary funds, GECC must allege a cause of action for conversion *of money*.  The court finds this argument persuasive, particularly because the cases relied upon by GECC to support its conversion claim involve the conversion of automobiles instead of monetary funds.  *See Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 759 (Tex. App.—Dallas 2008, no pet.); *Smith v. Macimum Racing, Inc.*, 136 S.W.3d 337, 341 (Tex. App.—Austin 2004, no pet.).

On the face of the complaint, GECC contends that the $12,500,000 allegedly obtained through Prather's scheme was converted by Moving Defendants.  The court determines that such a *monetary* amount is strikingly different from personal property such as an automobile.  Accordingly, the elements for a claim of conversion of money should apply.  Under Texas law, money can be converted only if it is specifically identified and held in trust.  *Chu v. Hong*, 249

S.W.3d 441, 444 (Tex. 2008); *see Mauriceville Nat'l Bank v. Zernial*, 892 S.W.2d 858, 860 (Tex. 1995).  In essence, an action lies for conversion of money when "money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper."  *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007) (citation omitted).

The facts pleaded in GECC's complaint do not allege that the Worthington, PlainsCapital, and Sterling bank accounts ever owed GECC a fiduciary duty or were held for GECC's benefit. Even if the alleged converted funds were specifically identifiable, the requirements of being delivered for safekeeping and being intended to be kept segregated are lacking.  Ordinarily where a plaintiff has misstated a cause of action in a complaint, the court would afford that plaintiff an opportunity to amend the complaint rather than disposing of the claim through a Rule 12(b)(6) motion.  In this instance, however, the court determines that to allow amendment would be futile. GECC states in the complaint that the bank accounts at Worthington, PlainsCapital, and Sterling were held by other Defendants in this case, not by Plaintiffs.  The court therefore determines that, outside of conclusory allegations, Plaintiffs cannot allege sufficient facts that would evidence that those bank accounts held funds for GECC's benefit unless they completely changed their theory of recovery for this claim; and the court will not permit such a change.  Moreover, an amendment of this nature would cause unnecessary delay.  Accordingly, the court dismisses GECC's conversion claim against Moving Defendants.

### E.     Permanent Injunction

GECC requests a permanent injunction against Moving Defendants to prevent further expenditure of the received funds.  To obtain permanent injunctive relief, a plaintiff must demonstrate "(1) that it has suffered an irreparable injury; (2) that the remedies available at law,

**Memorandum Opinion and Order – Page 16**

such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008) (citation omitted).   Moving Defendants argue that GECC's allegations fall short of meeting these elements and that the request for permanent injunction should accordingly be dismissed.   In response, GECC contends that the court cannot evaluate whether GECC has satisfied the elements for a permanent injunction until after a full trial on the merits has occurred.

A permanent injunction is a remedy generally contemplated at the conclusion of a trial, at the remedy phase of a legal proceeding.   Whereas with an application for a preliminary injunction the   claimant must show a substantial *likelihood* of success on the merits, an applicant for a permanent injunction must show *actual* success on the merits.   *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).   Until judgment as a matter of law is imposed in favor of Plaintiffs or until Plaintiffs have prevailed at a trial on the merits, GECC cannot show actual success on the merits.   Accordingly, the court finds Moving Defendants' request for dismissal premature at this time.   The court therefore denies without prejudice Moving Defendants' request to dismiss GECC's application for permanent injunction.

### F.     Constructive Trust

In addition to its other claims, GECC also requests the court to impose a constructive trust against Moving Defendants.   The elements of a constructive trust under Texas law are summarized as (1) breach of a fiduciary relationship or, in the alternative, actual fraud, (2) unjust enrichment of the wrongdoer, and (3) tracing of the property to an identifiable *res.  Matter of Haber Oil Co.*, 12 F.3d 426, 437 (5th Cir. 1994).  Moving Defendants argue that GECC has not satisfied these elements

with respect to Moving Defendants.  Specifically, Worthington and Sterling contend that GECC has not alleged that either of them breached a fiduciary duty to GECC or committed actual fraud, nor has GECC alleged that Worthington and Sterling were unjustly enriched as a result.  PlainsCapital argues an affirmative defense, contending that it holds a priority right to the funds at issue which trumps any constructive trust that the court would impose with respect to GECC.

As to Worthington and Sterling's arguments, the court determines that GECC need only establish that a breach of a fiduciary duty occurred or that a fraud was committed, and that unjust enrichment resulted.  The forms of constructive trusts are practically without limit and may be applied wherever necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrongdoer.  *Fitz-Gerald v. Hull*, 237 S.W.2d 256, 263 (Tex. 1951); *see Burrow v. Arce*, 997 S.W.2d 229, 241 & n.38 (Tex. 1999); *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex. 1980).  Whether a constructive trust should be imposed at all is within the discretion of the trial court.  *Schneider v. Schneider*, 5 S.W.3d 925, 929 (Tex. App.—Austin 1999, no pet.).

Accordingly, the court finds that, similar to the TUFTA claim, GECC does not need to establish that it was *Moving Defendants* who engaged in the fraud or who were unjustly enriched. What is relevant here is that Moving Defendants allegedly received fraudulently obtained funds from Prather and that Moving Defendants now allegedly hold these fraudulently obtained funds.  GECC alleges, through its money had and received claim, that all Defendants, including Moving Defendants, were unjustly enriched by Prather's fraud.  Viewing the pleaded allegations in the light most favorable to Plaintiffs, the court further determines that these funds can be traced to an identifiable *res*.  The court therefore finds that GECC has properly pled a request for imposition of a constructive trust against Moving Defendants.  Although GECC has not specifically alleged a

**Memorandum Opinion and Order – Page 18**

breach of fiduciary duty or a fraud committed by *Moving Defendants*, GECC's request for imposition of a constructive trust will not be defeated by a Rule 12(b)(6) motion.

As to PlainsCapital's argument pertaining to a priority right to the funds at issue, the court determines that this is an affirmative defense to the claims brought by GECC and that PlainsCapital must accordingly carry the burden of establishing such affirmative defense within the context of a motion for summary judgment or at trial. Moreover, as with a request for a permanent injunction, a constructive trust is a remedy generally contemplated by the court at the remedies phase of a legal proceeding, only after an entitlement to judgment has been ascertained. The court accordingly denies without prejudice Moving Defendants' request to dismiss GECC's request for imposition of a constructive trust.

### G.      Rule 9(b) and Rule 12(e) Challenges

PlainsCapital and Sterling further challenge GECC's pleadings under Rule 9(b) and Rule 12(e). With respect to Rule 9(b), PlainsCapital argues that GECC's fraudulent transfer claim is equivalent to pleading fraud, and thus is subject to Rule 9(b)'s heightened pleading standard. The court disagrees. GECC has alleged that PlainsCapital is a "transferee" under TUFTA with respect to the $525,000 seizure of funds obtained by Prather, allegedly through fraud. These allegations comport with Rule 8 in that they provide PlainsCapital with a short and plain statement of GECC's fraudulent transfer claim, showing that GECC is entitled to relief. GECC has not alleged *fraud* against PlainsCapital or Moving Defendants, which is the contemplation of Rule 9(b). Plaintiffs have merely alleged that Moving Defendants were the recipient of funds fraudulently obtained. Nothing in the complaint or record indicates that Moving Defendants committed any fraudulent act that caused the funds to be transferred. That GECC has specifically alleged fraud against other Defendants in this case (and not against Moving Defendants) further indicates that GECC did not

**Memorandum Opinion and Order – Page 19**

intend to allege fraud against PlainsCapital.  Accordingly, the heightened pleading standard of Rule 9(b) does not apply.

PlainsCapital also argues that GECC's request for exemplary damages with respect to its money had and received claim should be dismissed pursuant to Rule 9(b) because GECC has not alleged malice or fraud.  Viewing the pleadings in the light most favorable to Plaintiffs, the court determines that GECC's allegation as to the culpable mental state of Moving Defendants rises to the level of "gross negligence" due to the "suspicions" Moving Defendants held regarding the bank accounts at issue and their resulting failure to investigate or close the accounts in the case of PlainsCapital and Sterling.  Gross negligence is a condition of a person's mind[3] that may be alleged generally under Rule 9(b) and provides sufficient justification for an award of exemplary damages if proved by clear and convincing evidence.  Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a)(3) (Vernon 2008).  Accordingly, the court will not dismiss GECC's request for exemplary damages at this time.  The matter can be revisited in the context of a motion for summary judgment or at trial.

PlainsCapital and Sterling also each request a more definite statement under Rule 12(e). In light of the court's preceding analysis, however, the court determines that a more definite statement is unnecessary, as the issues and focus of the claims have been sufficiently narrowed.  The court therefore concludes that Moving Defendants have fair notice of GECC's claims against them and that the preparation of their defense will not be prejudiced if GECC does not replead.  Accordingly, the alternative motions for a more definite statement filed by PlainsCapital and Sterling are **denied**.

---

[3]*See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 n.7 (5th Cir. 1994) (distinguishing gross negligence from deliberate indifference insofar as the degrees of certainty on the part of the actor differ).

**Memorandum Opinion and Order – Page 20**

IV.     <u>**Conclusion**</u>

For the reasons stated herein, the court **grants in part denies in part** all three Motions.   The

Motions are **granted** to the following extent:  GECC's conversion claim against Moving Defendants

are **dismissed with prejudice**.  GECC's fraudulent transfer claim against Sterling is also **dismissed**

**with prejudice**.  GECC's fraudulent transfer claims against Worthington and PlainsCapital are

**dismissed with prejudice** *only to the extent* that the claims concern the funds deposited and

currently held in Worthington and PlainsCapital bank accounts controlled by Prather, Buchanan, or

Wright.

In all other respects, the Motions are **denied**.  To the extent that GECC's fraudulent transfer

claims concern the $2,470,000 paid to Worthington and the $525,000 seized by PlainsCapital,

GECC's fraudulent transfer claims remain live.  GECC's claims for money had and received, the

request for a permanent injunction, and the request for imposition of a constructive trust also remain

live.  The court further **denies** PlainsCapital's and Sterling's alternative motions for a more definite

statement pursuant to Rule 9(b) and Rule 12(e).

**It is so ordered** this 31st day of December, 2009.


                                            Sam A. Lindsay
                                            United States District Judge