IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **GE CAPITAL COMMERCIAL, INC., et al.,** | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:09-CV-572-L** |
| **WRIGHT & WRIGHT, INC., et al.,** | § § § | |
| Defendants. | § | |

# MEMORANDUM OPINION AND ORDER

Before the court is Defendant Worthington National Bank's Motion for Summary Judgment, filed July 26, 2010. After carefully considering the motion, response, reply, briefs, appendices, record, and applicable law, the court **denies** Defendant Worthington National Bank's Motion for Summary Judgment.

## I. Factual and Procedural Background

Plaintiffs GE Capital Commercial, Inc., General Electric Capital Corporation, and GE Capital Financial, Inc. (collectively, "GECC" or "Plaintiffs") filed their Original Complaint and Application for Preliminary and Permanent Injunction in this court on March 27, 2009. Plaintiffs filed their Amended Complaint on April 9, 2009, alleging multiple claims against Defendants and requesting damages, attorney's fees, costs, a permanent injunction, and a writ of attachment. Plaintiffs originally instituted this suit against Wright & Wright, Inc. ("Wright & Wright"), BBAF Enterprises, Inc. ("BBAF"), Justin Prather ("Prather"), David Ashley Wright ("Wright"), Worthington National Bank ("Worthington"), PlainsCapital Bank ("PlainsCapital"), Sterling Bank ("Sterling"), Texana

Bank ("Texana"), and Frank Boyd Buchanan, III ("Buchanan"). Currently, only Wright & Wright, Wright, and Worthington remain as Defendants in the suit, as all others have been dismissed.

Plaintiffs filed their Second Amended Complaint ("Complaint"), the live pleading, on June 26, 2009. The Complaint asserted claims for money had and received, violations of the Texas Uniform Fraudulent Transfer Act ("TUFTA"), breach of fiduciary duty, conversion, fraud, conspiracy, and the imposition of a constructive trust. Plaintiffs also seek damages, reasonable attorney's fees, costs, a permanent injunction, and a writ of attachment. By court order on December 31, 2009, the court dismissed Plaintiffs' conversion claim with prejudice, dismissed with prejudice the fraudulent transfer claims against Worthington and PlainsCapital to the extent that the claims concern the funds deposited and then held in Worthington and PlainsCapital bank accounts controlled by Defendants Prather, Buchanan, or Wright. To the extent that GECC's fraudulent transfer claims concern the $2,470,000 paid to Worthington and the $525,000 seized by PlainsCapital, GECC's fraudulent transfer claims remain. GECC's claims for money had and received, the request for a permanent injunction, and the request for imposition of a constructive trust also remain. GECC's conspiracy and breach of fiduciary duty claims against Prather, Buchanan, and BBAF, were dismissed after the parties settled. The breach of fiduciary claims against Wright, and Wright & Wright remains.

This action arises out of a series of allegedly fraudulent schemes resulting in the alleged conversion of over $12,500,000 from GECC. Plaintiffs contend that, in 2004, Defendant Prather entered into a scheme with Defendants Wright and Buchanan involving the purchase and sale of heavy construction equipment. Both Wright and Buchanan allegedly, after being promised an improbable and high rate of return by Prather, orally agreed to invest millions of dollars into the

**Memorandum Opinion and Order – Page 2**

scheme, turned over control of their bank accounts to Prather, created new accounts and business entities with Prather, and sought outside investors to finance the heavy equipment purchases.

Wright allegedly maintained bank accounts with Defendant Sterling Bank in his own name and in the name of Wright & Wright, a company of which Wright was the sole member and owner by 2003. Buchanan allegedly maintained a bank account with Defendant PlainsCapital Bank in the name of Defendant BBAF, a company incorporated by Buchanan in 2006. In 2007, Prather and Wright allegedly opened a bank account together at Defendant Worthington Bank and, in connection therewith, sought and obtained a $2,500,000 line of credit from Worthington.

GECC contends that the Worthington line of credit, ostensibly acquired for the purpose of purchasing heavy equipment, was never used for that purpose. By June 2008, Prather and Wright still owed Worthington $2,470,000 to satisfy the bank's demand for repayment of the loan, and had nothing to show from their alleged heavy equipment scheme. During the same time period, Prather also allegedly acquired a $3,500,000 loan from PlainsCapital. The terms of the PlainsCapital loan required Prather to maintain certain accounts at PlainsCapital with a minimum average monthly balance reaching into the range of hundreds of thousands of dollars; Prather allegedly could not independently meet these obligations.

As a result of Worthington's loan repayment demand, and, due to the necessity to maintain high value accounts with PlainsCapital, Prather allegedly engineered a new scheme to steal money to pay off his debt. In late June or early July 2008, Prather's employer, CitiCapital Commercial Corporation ("Citi"), operated a credit extension program that financed the purchase of golf cars, and Prather was the manager of this program. Prather allegedly used his status as manager to beguile Citi into wiring money directly into the bank accounts of BBAF and Wright & Wright by falsely indicating that those two companies were golf car "distributors." During July 2008, Prather

**Memorandum Opinion and Order – Page 3**

allegedly wired almost $7,500,000 to Wright & Wright's bank account, and used $2,470,000 of that money to repay Worthington. In early August 2008, GECC underwent a merger and acquired Citi; all the while Prather continued perpetuating his scheme. Prather allegedly created fabricated invoices, false e-mails, fraudulent promissory notes, and fictitious GECC employees to protect his scheme, causing GECC to wire over $5,000,000 more to BBAF and Wright & Wright between August 2008 and January 2009.

Once the combined $12,500,000 allegedly stolen through Prather's scheme was deposited into BBAF's or Wright & Wright's bank accounts by Citi and GECC, Prather, Buchanan, or Wright would allegedly wire those funds to other bank accounts. These bank accounts included Buchanan's personal account at PlainsCapital, Wright's personal account at Sterling, and Prather's personal accounts. Worthington allegedly grew suspicious of Prather and Wright's financial dealings with their "investors," but it declined to investigate the suspicious transactions, instead electing to close Prather and Wright's bank accounts. PlainsCapital and Sterling also allegedly had these same suspicions but made no investigation and did not close the accounts.

Prather allegedly used many of the fraudulently acquired funds to maintain the minimum required account balances at PlainsCapital to maintain his $3,500,000 loan. In March 2009, however, Prather ultimately defaulted on this loan, and PlainsCapital then allegedly seized over $525,000 from Prather's other bank accounts. GECC brings causes of action against all Defendants, and specifically alleges that Worthington is still in possession of funds that were fraudulently acquired by Prather and deposited at each bank. Defendant Worthington seeks summary judgment on the TUFTA, money had and received, and constructive trust claims, and on the equitable estoppel affirmative defense. Worthington asserts that GECC's claims are factually and legally insupportable and that the court should grant summary judgment.

## II. Legal Standard for Motion for Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner

in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III. Analysis

Defendant asserts four separate bases for summary judgment relief. Worthington argues that summary judgment is appropriate because no genuine issues of material fact exist as to the TUFTA, the money had and received, constructive trust claims of Plaintiffs, and Defendant's affirmative defense of equitable estoppel. The court will consider each issue separately.

### A. Fraudulent Transfer

The TUFTA is designed to prevent transfers of property with the intent to defraud creditors. Under the TUFTA, a fraudulent transfer occurs when a debtor makes a transfer with the "intent to hinder, delay, or defraud his creditors by placing the debtor's property beyond the creditor's reach." *Flores v. Robinson Roofing & Constr. Co.,* 161 S.W.3d 750, 754 (Tex.App.—Fort Worth 2005, pet. denied) (citing *Nobles v. Marcus,* 533 S.W.2d 923, 925 (Tex. 1976)). Although such a transfer is typically voidable, a transfer is not voidable under § 24.005(a)(1) "against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligor."

The TUFTA not only creates liability against "the person for whose benefit the transfer was made," such as the debtor, but also against the "first transferee of the asset," or any "subsequent transferee." Tex. Bus. & Com. Code § 24.009(b) (Vernon 2009).

Defendant contends that the transfer is not voidable because it accepted the wire transfers in good faith and without knowledge of wrongdoing. Defendant alleges that its good faith negates any claim that GECC may have under the TUFTA, and, as such, this court should dismiss the claim. Defendant argues that "in the context of fraudulent conveyances, 'good faith' means a transaction made without 'secret agreement.'" Def.'s Summ. J. Br. at 13 (citing *Hawes v. Central Tex. Prod. Credit Ass'n,* 503 S.W.2d 234 (Tex. 1973); *Yokogawa Corp. of America v. Skye Int'l Holdings, Inc.,* 159 S.W.3d 266, 270-71 (Tex. App.—Dallas 2005, no pet.)).

Plaintiffs respond that factual disputes relating to Defendant's good faith argument preclude summary judgment on the TUFTA claim. Specifically, Plaintiffs contend that the court should use an objective "good faith" standard to evaluate Defendant's summary judgment motion. Pls.' Summ. J. Resp. at 14. Plaintiffs contend that "[u]nder the objective standard, Defendants must show that their knowledge of particular facts was not such that they 'should have known' of the fraudulent scheme." *Id.* (citing *Warfield v. Byron,* 436 F.3d 551, 559-60 (5th Cir. 2006); *In re Sherman,* 67 F.3d 1348, 1355 (8th Cir. 1995)).

Defendant replies that the Texas Supreme Court has specifically addressed the meaning of good faith under the TUFTA. Def.'s Summ. J. Reply at 4 (citing *Hawes,* 503 S.W.2d at 235-36. Defendant contends that the Texas Supreme Court interprets good faith to "mean without secret agreement to benefit the grantor in some way other than by discharge of his debt." Def.'s Summ. J. Reply at 4. Defendant enumerates Texas case law adopting the "secret agreement" standard of good faith. *See Senior Commodity Co. v. Econo-Rail Corp.,* 2000 WL 350508 at *8 (Tex.

App.—Houston [14th Dist.] April 6, 2000, pet. denied) (reasoning that good faith is found where there was a secret agreement, even though the grantor actually intended to prefer one of his creditors over other creditors and the grantee had notice of the grantor's intent); *Bossier Bank and Trust Co. v. Phelan,* 615 S.W.2d 872, 874 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

After carefully reviewing the applicable Texas state law, the court determines that the "objective standard" should be used in this case. The court determines that Defendant's proposed standard is incorrect because *Hawes* is legally and factually inapposite to this case. In *Hawes,* the Texas Supreme Court evaluated an allegedly fraudulent conveyance where the jury set aside the insolvent petitioner debtor's *preference* of the petitioner/creditor over another respondent/creditor. *Hawes,* 503 S.W.2d at 235-36. The Texas Supreme Court carved out a narrow "exception to the fraudulent conveyance statute[1] in the case of 'preferences,' which are conveyance[s] of property by an insolvent debtor to one of his unsecured creditors in payment of a debt." *Id.* The court determined that the conveyance of property by the debtor to one of his unsecured creditors in payment of a debt was valid even though the grantor actually intended to prefer one of his creditors over other creditors.

Here, the court concludes that the preference exception as espoused in *Hawes* does not apply because the facts are distinguishable. The standard in *Hawes* applies only in the context of a "preference." Unlike in *Hawes,* Prather did not prefer to convey the property to Worthington over GECC. Here, Prather allegedly defrauded GECC and laundered the money through Worthington. Prather's alleged laundering scheme is a criminal act in and of itself, whereas merely preferring one creditor over another is not a criminal act. Had Prather legitimately paid the debt owed to

---

[1]The court recognizes that the common law rule at issue in *Hawes* is substantially similar to the current TUFTA; however, this fact does not constitute a deciding factor in the court's decision.

**Memorandum Opinion and Order – Page 8**

PlainsCapital, the conveyances would have been analogous. Since, the preference exception is inapplicable, the court applies the general standard to evaluate conveyances under the TUFTA. Consequently, the "secret agreement" standard does not apply, and the court uses the "objective standard" of good faith to evaluate the summary judgment motion.

To succeed on a motion for summary judgment, the transferee "must prove as a matter of law that it accepted the transfers in good faith and for reasonably equivalent value." *Hahn v. Love,* 321 S.W.3d 517, 526 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). A "transferee who takes property with knowledge of such facts as would excite the suspicions of a person of ordinary prudence and put him on inquiry of the fraudulent nature of an alleged transfer does not take the property in good faith and is not a bona fide purchaser." *Id.; see also Pan American Petro. Corp. v. Verde Oil Co., Inc.,* 367 F.2d 461, 464 (5th Cir. 1966) (reasoning that a subsequent purchaser's "mere suspicion is not sufficient, and the circumstances or facts must be such as, by the use of proper diligence, will lead to a knowledge of fraudulent intent"). [2] Further, "notice of fraudulent intent can be either actual or constructive." *Hahn,* 321 S.W.3d at 526; (citing *Madison v. Gordon,* 39 S.W.3d 604, 606 (Tex. 2001)). Texas courts hold that "actual notice results from personal information or knowledge," whereas constructive notice results from notice that "the law imputes to a person not having personal information or knowledge." *Hahn,* 321 S.W.3d at 526 (citing *Madison,* 39 S.W.3d at 606). Generally, the question of whether a party has notice is "a question of fact which is foreclosed by the judgment of the trier of the facts; it becomes a question of law only when there is no room for ordinary minds to differ as to the proper conclusion to be drawn from the evidence." *Hahn,* 321 S.W.3d at 527 (citing *O'Ferral v. Coolidge,* 228 S.W.2d 146, 148 (1950)).

---

[2]Although *Hahn* is a Texas Court of Appeals case, this court determines that the propositions espoused in *Hahn* is sufficiently similar to those espoused in *Pan American Petroleum.*

**Memorandum Opinion and Order – Page 9**

Consequently, a transferee's "notice of fraudulent intent is a question of fact that generally goes to the jury." *Hahn,* 321 S.W.3d at 526.

The court concludes that there are several genuine issues of material fact relating to whether the elements of the good faith defense to the TUFTA has been established by Defendant. Consequently, these issues are foreclosed by the judgment of the trier of the facts. A reasonable jury could render a verdict in favor of Plaintiffs due to Worthington's alleged failure to follow its own established policies and procedures, as well as the alleged failure to follow standard banking practices. Plaintiffs set forth evidence that had Defendant used proper diligence, Defendant would have had constructive knowledge of the fraudulent transfers. Plaintiffs allege that had Worthington used proper diligence and followed its own internal loan policies and industry policies, it would have discovered the fraudulent transactions. Pls.' Summ. J. Resp. at 16-17. Plaintiffs also contend that Worthington had constructive notice of Wright & Wright's fraudulent activities because it ignored the signs of fraud in Wright & Wright's financial statements. *Id.* at 18-20. GECC also points to Worthington's own statements that their suspicions of wrongdoing should have put Defendant on inquiry that fraud was occurring. *Id.* Plaintiffs contend and produce evidence that Worthington made statements acknowledging that "funds were being wired into the account on one business day and subsequently wired out to another bank or transferred to the account of Wright & Wright on the next business day." *Id.* at 21-22 (citing Pls.' Summ. J. App. at 192). The court determines that Plaintiffs have identified specific evidence in the record and articulated the evidence sufficiently to establish that there are genuine issues of material fact relating to Defendant's good faith defense. A reasonable jury could conclude that these facts could negate Worthington's good faith defense. Accordingly, the court determines that Plaintiffs have raised a genuine issue of material fact with respect to Defendant's good faith defense to a TUFTA violation.

**Memorandum Opinion and Order – Page 10**

### B. Money Had and Received

Defendant further contends that there are no genuine issues of material fact relating to Plaintiffs' money had and received claim. Specifically, Defendant argues that summary judgment is appropriate because Defendant received funds from Wright and Wright in due course of business, in good faith, and for valuable consideration. Def.'s Summ. J. Br. at 18. Defendant points to its previous argument that it acted in good faith as it accepted the loan payoff from Wright & Wright without knowledge of wrongdoing and without the existence of a secret agreement to defraud GECC. Plaintiffs respond that factual disputes regarding Worthington's good faith in accepting the allegedly stolen money precludes summary judgment on the claim. The court agrees.

Under Texas Law, a plaintiff seeking recovery under a theory of money had and received must prove that the "defendant holds money which in equity and good conscience belongs to him." *Staats v. Miller,* 243 S.W.2d 686, 687 (Tex. 1951). In examining the "good conscience" element, courts have concluded that, "one who receives money which has been illegally obtained by a third party in due course of business, in good faith, and for valuable consideration, can keep it without liability to him from whom it was stolen." *Sinclair Houston Federal Credit Union v. Hendricks,* 268 S.W.2d 290, 295 (Tex. Civ. App.—Galveston 1954, writ ref'd n.r.e.).

The court has carefully reviewed the parties' arguments and the summary judgment record; it concludes that there is a genuine issue of material fact as to whether the elements of money had and received have been established. Plaintiffs assert that factual disputes regarding whether Worthington currently holds the money in good conscience precludes summary judgment. Specifically, Plaintiffs assert that factual disputes relating to whether Worthington acted in good faith in accepting the transfers precludes summary judgment. Plaintiffs present competent evidence that could establish that Defendant did not take the money in good conscience. First, Plaintiffs state

**Memorandum Opinion and Order – Page 11**

that Worthington accepted the loan payoff despite flagging alleged suspicious activity in the Wright & Wright accounts on its Money Laundering Risk List. Pls.' Summ. J. Resp. at 24. Second, Plaintiffs contend that Worthington's internal documents show that Worthington "was aware of the [fraudulent] activity and ha[d] given the customer until June 24 to cease activity and use the account as intended." *Id.* Third, Plaintiffs argue that despite an increase in suspicion conduct, "Worthington explained that it was 'expecting a payoff of [a] large loan,' and decided not to close the account at that time." *Id.* at 25. The court concludes that Plaintiffs have identified specific evidence in the record and sufficiently articulated the evidence to establish that there are genuine issues of material fact relating to the "good conscience" element of money had and received. A reasonable jury could conclude that these facts, taken in the light most favorable to GECC, negate Defendant's argument that it accepted the funds in good conscience. Accordingly, the court determines that there are genuine issues of material fact to this claim, and Defendant is not entitled to judgment as a matter of law on this claim.

### C. Constructive Trust

Defendant argues that Plaintiffs cannot prove the elements of a constructive trust or raise a genuine issue of material fact as to any of the elements of this claim. Specifically, Worthington contends that there is no evidence to establish unjust enrichment by the wrongdoer, and thus the claim must fail as a matter of law. Def.'s Summ. J. Br. at 20.

Plaintiffs respond that the facts do support a claim for the imposition of a constructive trust. Specifically, Plaintiffs contend that they do not have to establish that it was Worthington who engaged in the fraud or who was unjustly enriched. Plaintiffs argue that they only have to prove that Worthington received the fraudulently obtained funds from Prather and that Worthington now holds

these fraudulently obtained funds. Plaintiffs further respond that they can prove both requirements in addition to the formal elements to establish a constructive trust.

In its reply, Defendant argues that Plaintiffs have failed to raise an issue of material fact as to whether Worthington was unjustly enriched. Defendant contends that "Plaintiff[s] seek relief under a constructive trust theory in an attempt to end-run the protections provided to a good faith transferee under TUFTA." Def.'s Reply at 15.

The elements of a constructive trust under Texas law are: "(1) a breach of a fiduciary relationship or, in the alternative, actual fraud, (2) unjust enrichment of the wrongdoer, and (3) tracing of the property to an identifiable *res.*" *Matter of Haber Oil.,* 12 F.3d 426, 437 (5th Cir. 1994). Unjust enrichment is actually "not a contract at all but [arises out of] an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended." *Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 684 (Tex. 2000). Further, a court may "reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust." *Martin v. Martin,* 130 S.W.2d 863, 866 (Tex. App.—Dallas 1939, writ ref'd).

In its motion for summary judgment, Worthington focuses solely on the second element of a constructive trust, namely, whether Plaintiffs can prove or raise a genuine issue of material fact that Worthington has been unjustly enriched. As Worthington's sole focus is on the second element, the court, for the purposes of Defendant's summary judgment motion, assumes that Worthington does not contest whether Plaintiff's can establish the first and third elements on a claim for the imposition of a constructive trust. Accordingly, the court will not devote any attention to the first and third elements of a constructive trust and turns to the second element: unjust enrichment.

**Memorandum Opinion and Order – Page 13**

The court has carefully reviewed the parties' arguments and the summary judgment record, and it concludes that there is a genuine issue of material fact as to whether the elements of a constructive trust have been established. A reasonable jury could conclude that Worthington was unjustly enriched. GECC has presented evidence that "Worthington was aware of facts that should have excited the suspici[ons] of a reasonably prudent bank, suspici[ons] that if acted upon very easily could have prevented the fraud from continuing." Pls.' Resp. at 25. The court agrees with Plaintiffs, insofar as GECC does not need to establish that it was Worthington who engaged in the fraud or who was unjustly enriched. Plaintiffs must establish, or raise a genuine issue of material fact, that Defendant did not receive the property in good faith and did not acquire the property with notice of a higher right. Plaintiffs have presented some evidence from which a reasonable jury could conclude that Defendant did not receive the property in good faith. Plaintiffs contend and have presented evidence that Worthington was aware of facts that indicated that the accounts were being used to perpetuate a fraud, and consequently, do not currently possess the funds in good faith. Pls.' Summ. J. Resp. at 26. As previously stated, the issue of "good faith" is a fact question, and thus it must be determined by the jury. A reasonable jury could conclude that these facts, taken in the light most favorable of GECC, support the imposition of a constructive trust. Accordingly, the court determines that Plaintiffs have raised a genuine issue of material fact with respect to the imposition of a constructive trust, and Defendant is not entitled to judgment as a matter of law on this claim.

### D.     Equitable Estoppel

Under Texas law, to establish the affirmative defense of equitable estoppel, the following elements must be met: "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted upon; (4) to a party without knowledge or means of obtaining knowledge of those facts; (5) who

**Memorandum Opinion and Order – Page 14**

detrimentally relies on the representations." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 515-16 (Tex. 1998).

Worthington argues that GECC is estopped from recovery. Specifically, Worthington contends that "but for GECC's employees' gross negligence and/or fraud, GECC would have no claims against Worthington." Def.'s Summ. J. Br. at 22. Defendant argues that GECC employees falsely attested that they had "reviewed external documents that support the wire transfer information and . . . reviewed the reason for the wire transfer and determined it to be appropriate." *Id.* (citing App. 249-258). Defendant further contends those attestations were false and, as a result, it relied on the attestation in accepting the transfer, releasing the collateral certification of deposit, and closing the accounts. Def.'s Summ. J. Br. at 22.

Plaintiffs respond that genuine issues of material fact are present, and, as such, the issue should go to the jury. Plaintiffs contend that the court should reject Worthington's argument for three reasons. First, GECC contends that the TUFTA prohibits summary judgment on equitable estoppel as a matter of law, where Defendant has also asserted a statutory good faith defense under the TUFTA. Second, GECC contends that substantial disputed issues of material fact preclude summary judgment on Worthington's affirmative defense of equitable estoppel. GECC argues that Worthington "has not (and cannot) conclusively establish that Plaintiffs made a false representation of material fact or that Worthington relied on it." Pls.' Summ. J. Resp. at 28. Further, GECC contends that Worthington "has not (and cannot) conclusively establish the fourth element of its defense, that it 'was without knowledge or means of obtaining knowledge,'" of Prather's fraudulent scheme. *Id.* (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 515-516 (Tex. 1998)). Finally, GECC argues that the court should reject Worthington's attempt to blame

Plaintiffs for falling victim to fraud. GECC contends that the court should look only to what "Worthington knew or should have known in taking the stolen money." Pls.' Summ. J. Resp. at 31.

Worthington replies that GECC should be estopped from recovery against Worthington because GECC should not be able to "now claim that it was injured by Worthington through action GECC *told* Worthington to take." Def.'s Summ. J. Reply at 15 (emphasis in original).

The court has carefully reviewed the parties' arguments and the summary judgment record; it concludes that there is a genuine issue of material fact as to whether the elements of the affirmative defense of equitable estoppel have been established by Defendant. Plaintiffs and Defendant have presented differing versions of whether GECC made a false representation or concealment of material facts. According to Plaintiffs, there is "no evidence in the summary judgment record that Worthington in fact received, reviewed, or relied on [the payoff] forms or that language when it accepted the transfers for its own benefit." Pls.' Summ. J. Resp. at 28. To the extent Plaintiffs' witnesses are credible on this ground, a jury could find that Plaintiffs should not be estopped from recovery because Plaintiffs did not make a false representation or conceal any material fact. Defendant has presented evidence, including the wire transfer e-mails, that could be construed as evidence that GECC falsely represented or concealed material facts. The court cannot resolve these credibility questions on a motion for summary judgment, and there are fact issues with respect to whether Defendant had knowledge or a means of obtaining knowledge of those facts. Accordingly, the court determines that there are genuine issues of material fact with respect to this affirmative defense, and Defendant is not entitled to judgment as a matter of law on this defense.

## IV. Conclusion

For the reasons herein stated, the court **determines** that genuine issues of material fact exist with respect to the TUFTA, money had and received, and constructive trust claims of Plaintiffs, and

**Memorandum Opinion and Order – Page 16**

with respect to Defendant's affirmative defense of equitable estoppel. The court therefore **denies** Defendant Worthington National Bank's Motion for Summary Judgment, and these matters remain for trial or resolution by the parties.

**It is so ordered** this 13th day of January, 2011.

/s/ Sam A. Lindsay
Sam A. Lindsay
United States District Judge