IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **GE CAPITAL COMMERCIAL, INC.,** **et al.,** | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:09-CV-572-L** |
| **WORTHINGTON NATIONAL BANK,** | § § § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The court conducted a pretrial hearing on October 11, 2011, at 9:30 a.m. to resolve certain issues in this case prior to trial.     Plaintiffs GE Capital Commercial, Inc., General Electric Capital Corporation, and GE Capital Financial, Inc. (collectively, "GECC" or "Plaintiffs") and Defendant Worthington National Bank ("Worthington" or Defendant") are the only remaining parties in this action.   The only substantive claim remaining for trial is GECC's claim for violations of the Texas Fraudulent Transfer Act ("TUFTA").   The claims for attorney's fees and court costs will be addressed, as necessary, postverdict.   During the pretrial hearing, the court discussed Plaintiffs' Motion to Exclude Evidence and Motion in Limine, filed March 21, 2011, as well as Defendant's Motion in Limine, also filed March 21, 2011.   The court took the parties' motions under advisement and now renders its decision.

## I.     Plaintiffs' Motion to Exclude Evidence[1]

GECC filed its Motion to Exclude Evidence on March 21, 2011. In response, Worthington asserted that GECC improperly sought to use their Motion to Exclude Evidence as a mechanism to strike Worthington's affirmative defenses. Specifically, Worthington asserted that the proper mechanism for challenging an insufficient affirmative defense is through a motion to strike filed within 21 days after service of the applicable pleading under Federal Rule of Civil Procedure 12(f). Def.'s Resp. to Pls.' Mot. to Exclude at 2. Worthington further contended Plaintiffs' Motion to Exclude must be construed as a Rule 12(f) motion to strike; that Worthington's Answer was served upon Plaintiffs more than one year ago on January 13, 2010; and that Plaintiffs' Motion to Exclude Evidence must therefore be denied in full as untimely under the Federal Rules of Civil Procedure.

GECC asserted in its Motion to Exclude Evidence that certain of Worthington's affirmative defenses were improperly pled and that Worthington's pleading does not provide GECC with fair notice of any specific conduct that supports the defenses. Pls.' Mot. to Exclude at 5. Worthington countered that it properly pled all affirmative defenses in general terms more than sufficient to give Plaintiffs fair notice and that GECC cannot claim that they are unfairly surprised by Worthington's assertion of any affirmative defenses.

---

[1] Plaintiffs filed a "Motion to Exclude Evidence and Motion in Limine." Plaintiffs requested the court to exclude evidence relating to the affirmative defenses asserted by Defendant. Hereinafter, the court refers to this portion of the motion as Plaintiffs' "Motion to Exclude Evidence." In the alternative, Plaintiffs requested an order restricting counsel and witnesses from mentioning certain subjects in the presence of the jury. Hereinafter, the court refers to this portion of the motion as Plaintiffs' "Motion in Limine." The court considers the motion to exclude evidence and motion in limine in turn.

**Memorandum Opinion and Order – Page 2**

The proper remedy for an insufficient affirmative defense is a motion to strike under Federal Rule of Civil Procedure 12(f).   *See United States v. Brink,* 2011 WL 835828, at *2, n.1 (S.D. Tex. Mar. 4, 2011); *Huffman v. Remstar Int'l, Inc.*, 2009 WL 1445967 (E.D. Tex. May 21, 2009) (construing a motion to dismiss an affirmative defense for failure to state a claim under Rule 12(b)(6) as a motion to strike pursuant to Rule 12(f)).   The court may strike from a pleading an insufficient defense "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading."   Fed. R. Civ. P. 12(f).   The court notes that by GECC's Motion to Exclude Evidence, GECC sought to object to the insufficiency of the affirmative defenses asserted in Worthington's Answer.   Accordingly, the court construes GECC's Motion to Exclude Evidence as a motion to strike.   GECC did not timely file a motion to strike as the Motion to Exclude (now construed as a motion to strike) was filed on March 21, 2011, more than one year after Defendants filed their Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint and Application for Permanent Injunction ("Answer"), which was filed January 13, 2010.   As the motion is untimely, the court **denies** that portion of Plaintiffs' Motion to Exclude Evidence and Motion in Limine that constitutes Plaintiffs' Motion to Exclude Evidence but will *sua sponte* consider the sufficiency of the affirmative defenses.

### A.      Standard for a Motion to Strike Under Rule 12(f)

Although motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law.   *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057-58 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983).   The court has discretion to strike an insufficient defense or redundant, immaterial, impertinent, or scandalous matter *sua sponte*.   Fed. R. Civ. P. 12(f)(1); *McCorstin v. U. S. Dep't of Labor*, 630 F.2d 242, 244 (5th Cir. 1980).   While a party is limited to

21 days in moving to strike, such limitation does not apply to the court, as it may act *sua sponte* at any time in striking the defense. *Wine Mkts. Int'l v. Bass*, 177 F.R.D. 128, 133 (E.D.N.Y. 1998). The court may consider only whether the affirmative defenses asserted by Defendant are sufficient as a matter of law. The court may therefore consider: (1) whether the defenses are applicable, and (2) whether the defenses are sufficiently pled as to give Plaintiffs fair notice. *See EEOC v. Courtesy Bldg. Servs.*, 2011 WL 208408, at *1 (N.D. Tex. Jan. 21, 2011) ("In striking a defense as insufficient, the defense must be insufficient as a matter of law. Additionally, there must be enough factual particularity in the affirmative defense to give the plaintiff "fair notice." (citation omitted)). *See also Kaiser Aluminum*, 677 F.2d at 1061 (striking antitrust defense as insufficient as a matter of law because it did not apply to plaintiff's underlying action).

### B.     Standard for Pleading Affirmative Defenses

"An affirmative defense is subject to the same pleading requirements as is the complaint." *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). Thus, an affirmative defense need only recite a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). A defendant must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff "fair notice." *Woodfield,* 193 F.3d at 362. It is unclear whether the plausibility standard for pleading, expressed in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (U.S. 2007) *and Ashcroft v. Iqbal*, 556 U.S. 662 (U.S. 2009), extends to the pleading of affirmative defenses. The Fifth Circuit has not addressed this issue. In the absence of guidance from the Fifth Circuit and Supreme Court, the court will apply the standard from *Woodfield.  See EEOC v. Courtesy Bldg. Servs.,* 2011 WL 208408 (applying the *Woodfield* standard in absence of guidance from Fifth Circuit and Supreme Court on applying *Twombly and Iqbal* standard to affirmative defenses). Under *Woodfield,* The "fair notice" pleading requirement is met if the defendant

"sufficiently articulated the defense so that the plaintiff was not a victim of unfair surprise." *Woodfield*, 193 F.3d at 362.   A court employs a fact-specific analysis in deciding whether the plaintiff was unfairly surprised. *Id.*

### C.      Affirmative Defenses Asserted by Worthington

The court will consider each affirmative defense asserted by Defendant, in turn, for applicability and fair notice.

### 1.      Mitigation of Damages

Worthington asserts mitigation of damages as an affirmative defense.   The mitigation of damages doctrine requires a plaintiff to exercise reasonable care in minimizing its damages. *Formosa Plastics Corp., USA v. Kajima Int'l, Inc.*, 216 S.W.3d 436, 458 (Tex. App.—Corpus Christi 2006, pet. denied) (citing *Great Am. Ins. Co. v. North Austin MUD*, 908 S.W.2d 415, 426 (Tex. 1995)).   The duty to mitigate arises in both contract and tort cases.   *Id.* (citing *Pulaski Bank & Trust Co. v. Tex. Am. Bank*, 759 S.W.2d 723, 735 (Tex. App.—Dallas 1988, writ denied). The duty, however, arises only if it can be done with trifling expense or with reasonable exertions. *Gunn Infiniti v. O'Byrne*, 996 S.W.2d 854, 857 (Tex. 1999)).

During the pretrial hearing, the court discussed at great length the distinction between the doctrines of contributory negligence and mitigation of damages.   Contributory negligence goes to the proximate cause of the original incident; mitigation of damages, on the other hand, arises from the injured party's separate duty to act reasonably in reducing his damages.   *Young v. Thota*, 271 S.W.3d 822, 830 (Tex. App.—Fort Worth 2008, pet. denied) (citing *Hygeia Dairy Co. v. Gonzalez*, 994 S.W.2d 220, 226 (Tex. App.—San Antonio 1999, no pet.).   The party that asserts an injured party's failure to mitigate his damages has the burden of proving the failure to mitigate and must show the extent to which the damages were increased by the failure to mitigate.   *Thota*,

271 S.W.3d at 830 (citing *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 697 (Tex. App.—Fort Worth 2006, pet. denied)).   The duty to mitigate necessarily arises *after* a party has been injured.   Further, the doctrine of mitigation of damages is applicable only if the victim of the wrongdoer's act has knowledge of the fact which makes mitigation or avoidance of the consequences necessary.   *Pulaski*, 759 S.W.2d at 735 (citing *Trinity Universal Ins. Co. v. Fuller*, 524 S.W.2d 335, 338 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.)).

In this case, GECC alleged that Worthington is a recipient of a fraudulent transfer and acted in bad faith or willful ignorance as to the transferor's fraudulent conduct.   Plaintiffs' Second. Am. Compl. at 14, ¶ 43.   GECC clarified at the pretrial hearing that the transfer it seeks to avoid is the transfer of approximately $2.5 million from Wright & Wright to Worthington in repayment of the line of credit extended to Wright & Wright by Worthington in June 2007. Therefore, the injury is GECC's alleged loss resulting from the transfer from Wright & Wright to Worthington repaying the line of credit, and the question is whether GECC, after discovering its injury, could have acted reasonably in reducing its damages.

Worthington did not assert in its Answer how GECC failed to mitigate damages. Worthington asserted only that "Plaintiffs had a duty to mitigate the damages they seek and they failed to do so."   Answer at 15, ¶ 129(d).   In relation to this defense, Worthington, at the pretrial hearing, asserted that to mitigate damages GECC should have had in place better supervisory oversight.   Pretrial Hr'g Tr. 36:22-37:1.   Worthington further asserted that there would not have been a fraudulent transfer had GECC acted to prevent Prather's alleged fraudulent activities. Pretrial Hr'g Tr. 37:11-17.   Worthington agreed with the court's summarization of its mitigation of damages defense: that GECC was allegedly negligent and the injury would not have occurred but for GECC's negligence.   Pretrial Hr'g Tr. 37:18-38:4.   Worthington's interpretation of the

mitigation of damages defense, however, misconstrues the doctrine.    Mitigation necessitates that a plaintiff take action to prevent further loss *after* the injury has occurred.    The doctrine of contributory negligence goes to the proximate cause of the original incident.    Worthington failed to allege in its pleadings, and even after the court made repeated inquiries of Defendant's counsel at the pretrial hearing, how GECC could have acted reasonably to reduce damages *after* the injury occurred.    As Worthington could not demonstrate the applicability of mitigation of damages, the court determines this affirmative defense is insufficient as a matter of law and **will strike** Worthington's mitigation of damages affirmative defense.

### 2.      Unclean Hands

Worthington National Bank asserted in its Answer that "Plaintiffs come to the Court with unclean hands."    Answer at 15, ¶ 129(b).    The court first considers whether the doctrine of unclean hands applies.    The Texas Uniform Fraudulent Transfer Act ("TUFTA") states: "*Unless displaced by the provisions of this chapter*, *the principles of law and equity*, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, *or other validating or invalidating cause*, *supplement its provisions*.    Tex. Bus. & Com. Code § 24.011 (West 2009) (emphasis added).    Thus, the equitable doctrine of unclean hands supplements TUFTA to the extent it is not displaced by a provision of TUFTA.    Though the court denies Plaintiffs' Motion to Exclude Evidence as untimely, Plaintiffs did not assert therein, and the court does not find, that any provision of TUFTA displaces the doctrine of unclean hands.

Texas courts have applied the doctrine of unclean hands to prevent recovery under TUFTA. *See, e.g., Jackson Law Office v. Chappell*, 37 S.W.3d 15, 26-27 (Tex. App.—Tyler 2000, pet. denied) (holding the doctrine of unclean hands applied to bar the equitable set-aside of the

fraudulent transfers under TUFTA); *Patel v. Kuciemba*, 82 S.W.3d 589, 599 (Tex. App.—Corpus Christi 2002, pet. denied) (applying the unclean hands doctrine to deny equitable relief under TUFTA).   Plaintiffs contend that these cases involve a plaintiff/creditor seeking an avoidance of the transfer and that the plaintiff/creditor is not a stranger to the transaction it sought to avoid. Plaintiffs contend they are a stranger to the transaction at issue.   Plaintiffs further assert that Defendant has not cited any case in which a transferee asserted an unclean hands defense against a creditor who was seeking to avoid a transaction between the debtor/transferor and the transferee. Plaintiffs' situation is indeed anomalous, but the court finds the principles that comprise the doctrine of unclean hands instructive here.   "[A] party seeking an equitable remedy must do equity and come to court with clean hands."   *Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988)).   Setting aside a fraudulent transfer is an equitable remedy. *Jackson Law Office*, 37 S.W.3d at 26 (citing *Texas Sand Co. v. Shield*, 381 S.W.2d 48, 53 (Tex. 1964), *superseded by statute on other grounds*, Tex. Bus. & Com. Code §§ 24.005(a), 24.008(a)(1) and 24.009(a) (Texas law now provides that fraudulent transfers are "avoidable," not "void")).   Here, GECC seeks the equitable remedy of avoidance of a transfer.   Accordingly, GECC, as the party seeking an equitable remedy, must come to the court with clean hands.

"The doctrine applies against a litigant whose own conduct in connection with the same matter or transaction has been unconscientious, unjust, marked by a want of good faith, or violates the principles of equity and righteous dealing." *Flores v. Flores*, 116 S.W.3d 870, 876 (Tex. App.—Corpus Christi 2003, no pet.).   Plaintiffs urge the court to take a restrictive view of the doctrine of unclean hands.   Plaintiffs consistently assert that they are a stranger to the transfer or transaction to which they now seek avoidance and thus their conduct is irrelevant.   They urge to court to focus on the "*same matter or transaction*" language used by Texas courts.   The court

cannot, however, ignore the "*connected*" language also used by Texas courts.  *See Flores*, 116 S.W.3d at 876 (citing *Omohundro v. Matthews*, 341 S.W.2d 401, 410 (Tex. 1960)) ("To justify the application of the principle of unclean hands, the party who complains that an opponent is in court with unclean hands because of the latter's conduct in the transaction out of which litigation arose, *or with which it is connected*, must show that the complainant, and not some third person, has been injured by the conduct.") (emphasis added).   In determining whether the conduct is sufficiently related to the transaction at issue to justify application of the doctrine of unclean hands, Texas courts have emphasized that the conduct triggering application of the doctrine must be "*connected with* the matter in litigation." *Bollier v. Austin Gurdwara Sahib, Inc.*, 2010 WL 2698765, at * 7 (Tex. App.—Austin July 9, 2010, pet. denied) (citing *Lazy M Ranch v. TXI Operation*, *LP*, 978 S.W.2d 678, 683 (Tex. App.—Austin 1998, pet. denied)) (emphasis added).

The court finds the *Lazy M Ranch* case instructive.   In *Lazy M Ranch*, appellant Lazy M Ranch, Ltd. ("Lazy M") entered into a contract with appellee TXI Operations, LP ("TXI"), a mining company.  The contract permitted subsurface testing on a part of Lazy M's land (1,669 acres described in the contract) and an option to lease 300 of the 1669 acres to mine subsurface materials.   TXI attempted to exercise its option, but Lazy M would not lease the land as promised because TXI had allegedly breached the contract by entering upon and testing Lazy M's land *outside* the 1,669 acres specified in the contract. TXI brought a suit for specific performance when Lazy M refused to honor its election under the contract.   The trial court granted TXI's summary judgment motion and awarded TXI specific performance.   Lazy M argued on appeal that even if its failure to honor the option agreement entitled TXI to some relief, TXI is not entitled to the equitable remedy of specific performance because it came to the court with unclean hands by entering upon and testing land *outside* the specified 1,669 acres, in violation of the contract.   According to TXI,

the doctrine of unclean hands was inapplicable because even if it breached the lease by trespassing outside the restricted area, its inequitable conduct was unrelated to the issue in dispute.   The court agreed that the doctrine of unclean hands does not apply when a party is guilty of inequitable conduct with regard to a transaction *separate* from the one in dispute.  *Lazy M Ranch v. TXI Operation*, *LP*, 978 S.W.2d at 683.   The court, however, held that "[i]t may not reasonably be contended that TXI's alleged misconduct did not grow out of or is unconnected to the lease-option transaction, or that it is a matter with which Lazy M has no concern." *Id.* at 683.

The court explained the equitable maxim as to clean hands "is confined to misconduct in regard to, or at all events connected with, the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the two parties, and arising out of the transaction; it does not extend to any misconduct, however gross, which is unconnected with the matter in litigation, and with which the opposite party has no concern."  *Lazy M Ranch*, 978 S.W.2d at 683.   This court is of the same mind.   There were three transfers on the following dates from GECC to Wright & Wright's deposit account at Worthington: June 3, 2008, for $732,500; June 8, 2008, for $807,130; and June 9, 2008, for $931,700.   On the dates of the respective transfers, these amounts were applied to repay the line of credit extended to Wright & Wright by Worthington.[2]  *See* Def.'s App. in Supp. of Mot. Summ. J. at 245, 249-258.   Worthington asserts that each wire provided instructions from GECC that the wired funds were to be applied by Worthington as "payoff on loan."[3]   Def.'s Br. in Supp. of Mot. Summ. J. at 6.   The repayment of the line of credit is the transfer which GECC seeks to avoid.   The court finds that there is a

---

[2] On June 9, 2008, Plaintiffs transferred $931,700 to Wright & Wright's account at Worthington. The same day, Worthington applied $939,334.99 in satisfaction of a line of credit extended to Wright & Wright.

[3] The court notes that the Funds Transfer Requests forms relating to each transfer states "Payoff on Loan #." The court, however, makes no determination as to the meaning or import of this language.

**Order- Page 10**

sufficient nexus between the three wire transfers from GECC to Wright & Wright and the payoff of the line credit to establish that they are connected.   The court therefore determines that the doctrine of unclean hands applies and requires consideration of GECC's conduct in relation to the three original transfers from GECC to Wright & Wright's account at Worthington.

The Fifth Circuit has interpreted the doctrine of unclean hands as applied in Texas to require the fact finder to weigh the equities.   *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 841 (5th Cir. 2004).   " . . . [T]he inquiry must thus go beyond an analysis of the plaintiff's errors of omission or commission, to balance these against the defendant's unjust acts."   *Id.* at 836.   The Fifth Circuit notes, however, that negligence by a plaintiff is likely insufficient to bar recovery under the unclean hands maxim. 380 F.3d at 841 (citing *Norris v. Gafas*, 562 S.W.2d 894, 897 (Tex. Civ. App.—Houston [1st Dist.] 1978, no writ) (clean hands doctrine "does not operate to repel all sinners from a court of equity"); *Ligon v. E. F. Hutton & Co.*, 428 S.W.2d 434, 437 (Tex. Civ. App.—Dallas 1968, writ ref'd n.r.e.) (mere negligence does not render hands so unclean as to bar recovery)).

Plaintiffs argue that proportionate liability is not available in cases involving fraudulent transfers.   The court notes, however, that the doctrine of unclean hands requires a weighing of the equities rather than a strict apportionment of fault as contemplated by the Chapter 33 of the Texas Civil Practices and Remedies Code (Texas's proportionate responsibility statute).   The court has, nevertheless, analyzed the cases cited by Plaintiffs in their Motion to Exclude Evidence in support of their proposition.

In *Davis v. Estridge*, 85 S.W.3d 308 (Tex. App.—Tyler 2001, pet. denied), the court held that the proportionate responsibility statute did not apply to section 27.01 of the Texas Business & Commerce Code (Fraud in Real Estate and Stock Transactions) reasoning that negligence has

traditionally never been a defense to fraud and the proportionate responsibility statute does not specifically include the Fraud in Real Estate and Stock Transactions statute within its application. Thus, appellants' damages were not be barred or reduced by their negligence.  In *Duperier v. Texas State Bank*, 28 S.W.3d 740, 753 (Tex. App.—Corpus Christi 2000, no pet.), the court analyzed the effect of applying a comparative fault standard to a provision of the Texas Securities Act, which establishes a cause of action for misrepresentations or omissions in connection with a securities transaction.  The statute excludes from liability any defendant who can prove the plaintiff knew the misrepresentations or the omissions or that the defendant did not and could not with reasonable care know the information.  Once proved, the defendant is entitled to absolute relief from liability. The court refused to apply a comparative fault standard to article 581-33A(2) of the Texas Securities Act because it would have obviated the absolute defense available under the article.  In *Kerrville HRH, Inc. v. Kerrville*, 803 S.W.2d 377, 385 (Tex. App.—San Antonio 1990, writ denied), the court determined contributory negligence was not a bar to a claim under section 27.01 of the Texas Business & Commerce Code (Fraud in Real Estate and Stock Transactions) because Texas courts are generally in agreement that failure to inspect or to investigate will not defeat an action in fraud.  In sum, these cases reason that proportionate liability is inapplicable under certain statutory fraud provisions because: (1) proportionate liability would abrogate the effect of a statutory defense, or (2) negligence is no defense to fraud.  With respect to the first reason, the doctrine of unclean hands does not abrogate the effect of the statutory good faith defense.  With respect to the second reason, the Fifth Circuit has indicated that negligence is likely insufficient to bar recovery under the unclean hands maxim.  In light of the cases specifically holding the doctrine of unclean hands applicable in TUFTA claims, *Jackson Law Office* and *Patel*,

which postdate Texas's proportionate responsibility statute (enacted in 1987), this court finds that the affirmative defense of unclean hands is applicable.

Finally, the court must determine whether GECC received "fair notice" of Defendant's unclean hands affirmative defense. In *Woodfield*, the Fifth Circuit noted that "in some cases, merely pleading the name of the affirmative defense . . . may be sufficient. *Woodfield*, 193 F.3d at 362. In other instances, however, "baldly 'naming' the broad affirmative defenses of 'accord and satisfaction' and 'waiver and/or release' falls well short of the minimum particulars needed to identify the affirmative defense in question." *Id.* The test is whether the defendant "sufficiently articulated the defense so that the plaintiff was not a victim of unfair surprise." *See id.*

Although, the affirmative defense of unclean hands is conclusorily pled by Defendant in its Answer, there are other documents, filed well before the close of discovery in this case (December 3, 2010)[4] that put Plaintiffs on notice of the factual basis of Defendant's unclean hands affirmative defense. For example, in Defendant's motion for summary judgment, Defendant contended that GECC was charged with evaluating and approving the three transfers that are at issue in this litigation; failed to follow its own policies and procedures; and filled out false attestations. *See* Def.'s Br. in Supp. of Mot. Summ. J at 10. GECC responded and requested that the court reject Worthington's attempt to blame Plaintiff's for Prather's fraud. *See* Pls.' Resp. to Def.'s Mot. Summ. J. at 30-31. GECC's response was filed on September 9, 2010, nearly three months before the close of discovery. Plaintiffs could have sought additional discovery on this issue if they did not believe they were aware of the basis of such affirmative defense. The court also notes Worthington's Answer has been on file since January 13, 2010. GECC did not move for a more definite statement of the affirmative defense, move within 21 days of service of the pleading to

---

[4] *See* Amended Scheduling Order at 4.

Order- Page 13

strike the defense, or even move for summary judgment on the defense.   The court cannot say that Plaintiffs are victims of unfair surprise.

In light of the foregoing, the court **declines to strike** the affirmative defense of unclean hands, as the doctrine is legally applicable, and the court concludes unfair surprise has not been shown.

### 3.      Laches

Defendant alleges "Plaintiffs' claims are barred by laches."   Answer at 16, ¶ 129 (f).   The court finds this defense insufficient as a matter of law.   The doctrine of laches requires a showing of the following: (1) the suing party has unreasonably delayed asserting his or her rights, and (2) the opposing party, due to the delay, has made a good faith change of position to his or her detriment. *In re Estate of Romancik*, 281 S.W.3d 592, 597 (Tex. App.—El Paso 2008, no pet); *Doncaster v. Hernaiz*, 161 S.W.3d 594, 603 (Tex. App.—San Antonio 2005, no pet.).   When laches is asserted before the statute of limitations has run, a defending party must also show that allowing the action to proceed, would work a grave injustice.   *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998).

Laches is generally not available in a suit to enforce a statutory right because, in such a case, the statute of limitations is the appropriate defense.   *Houston Lighting & Power Co. v. City of Wharton*, 101 S.W.3d 633, 638 (Tex. App.—Houston [1st Dist.] 2003, pet denied).   Extraordinary circumstances that render enforcement of the claimant's right inequitable may, however, justify the defense of laches.   *Houston Lighting & Power Co*, 101 S.W.3d at 638.   TUFTA has its own statute of limitations.   For actions arising under section 24.005(a)(1),[5] where a transfer is allegedly made with actual intent to hinder, delay, or defraud any creditor of the debtor, the claim, except for

---

[5] This action arises under section 24.005(a)(1), as Plaintiffs allege "Prather, Buchanan, Wright, BBAF, or Wright & Wright made the transfers with the actual intent to hinder, delay, or defraud GECC and other creditors, in violation of Tex. Bus. & Com. Code § 24.005."   Pls.' Second Am. Compl. at 13, ¶ 40.

certain exceptions not applicable here, must be brought within four years after the transfer was made or the obligation was incurred. Tex. Bus. & Com. Code § 24.010(a)(1).   In this case, there is no dispute that Plaintiffs brought their suit within the four-year statute of limitations required by TUFTA.   Further, Worthington does not set forth in its pleading any extraordinary circumstance that would justify the defense of laches.

Worthington asserts that its defense of laches is *not* based on Plaintiff's delay in bringing suit against Worthington, but rather for Plaintiff's delay in failing to properly investigate and remedy Prather's fraudulent conduct.   Resp. to Pls.' Mot. to Exclude at 9.   The defense of laches is an equitable doctrine designed to promote adjudication of disputed issues.   Laches rests on the theory that, because of the staleness of the demand, a defendant would be unconscionably prejudiced if the claim is not barred.   *Stevens v. State Farm Fire & Cas. Co.*, 929 S.W.2d 665, 672 (Tex. App.—Texarkana 1996, writ denied).   A "stale demand" is a claim that is asserted after such a lapse of time as to render it difficult or impossible for the court to ascertain the truth of the matters in controversy and do justice between the parties, and is asserted after such a lapse of time as to create a presumption against the existence or the validity of the claim or to justify the court in presuming that the claim has been abandoned or satisfied.   *Pearson v. American Fidelity & Casualty Co.*, 321 S.W.2d 620, 622 (Tex. Civ. App.—Amarillo 1959, no writ).   The court will not stretch the well-established doctrine of laches to include Defendant's novel and unpleaded interpretation.   Further, Defendant cites no authority for its interpretation and only recently described it in Defendant's Response to Plaintiffs' Motion to Exclude Evidence.

The court determines that the defense of laches is inapplicable, as TUFTA has its own statute of limitations, and Defendant has pled no extraordinary circumstance rendering it applicable. Moreover, the interpretation of the laches defense now asserted by Defendant was not

Order- Page 15

sufficiently asserted such that Plaintiffs had "fair notice" of the defense.   Accordingly, the court **will strike** this affirmative defense.

### 4.        Quasi-Estoppel and Equitable Estoppel

Defendant alleges that "Plaintiffs are estopped to recover against Worthington because Plaintiffs failed to supervise Prather, failed to use diligence and ordinary care to protect their own rights and funds, and failed to follow their own procedures pertaining to the disbursement of funds."   Answer at 16, ¶ 129(e).   The court will first consider the applicability of equitable estoppel.

The elements of equitable estoppel are: "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations."   *Johnson & Higgins v. Kenneco Energy*, 962 S.W.2d 507, 515-516 (Tex. 1998) (citing *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex. 1991)).   Plaintiffs assert that the defense of estoppel is displaced by TUFTA.   TUFTA states: "Unless displaced by the provisions of this chapter, the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement its provisions." Tex. Bus. & Com. Code § 24.011.   Specifically, Plaintiffs assert that Worthington's section 24.009(a) defense ("good faith defense") overlaps the elements of Worthington's equitable estoppel defense, and the statutory good faith defense thus displaces its equitable estoppel defense.   Section 24.009(a) provides: "A transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." Tex. Bus. & Com.

Code § 24.009(a).   Thus, to establish an affirmative defense to § 24.005(a)(1), Defendants must produce evidence of two elements: (1) reasonably equivalent value; and (2) good faith.

Plaintiffs offer *Smith v. Suarez,* (*In re IFS Fin. Corp.*), 417 B.R. 419 (Bankr. S.D. Tex. 2009), in support of their displacement proposition.   In *In re IFS Fin. Corp.*, the defendants argued that the application of TUFTA yielded inequitable results because the individuals most responsible for the now defunct corporation's demise would benefit most from the recovery.   *Id.* at 447. Essentially, the defendants urged the court to supplant the result yielded by TUFTA for a more equitable result.   The court refused to elevate its own judgment above the Texas Legislature's. The court reasoned section 24.011 is analogous to 11 U.S.C. § 105, the provision under the Bankruptcy Code granting bankruptcy courts equitable powers, and that the Supreme Court and Fifth Circuit have clarified that courts cannot use 11 U.S.C. § 105 to create new rights or ignore existing rights.   *Id.*   The court did not find that the elements of an equitable defense overlapped a statutory defense rendering the equitable defense inapplicable.

Section 24.011 of TUFTA expressly allows the defense of estoppel to the extent not displaced by TUFTA.   Defendants assert that if the statutory good faith defense displaced the doctrine of estoppel, the defense of estoppel could never be used to defend against a TUFTA claim. This court agrees.   The question presented involves the interpretation of a Texas statute.   The court should apply the statutory analysis that a Texas court would apply.   *LaSalle Bank N.A. v. Sleutel*, 289 F.3d 837, 839 (5th Cir. 2002) (citing *McNeil v. Time Ins. Co.*, 205 F.3d 179, 183 (5th Cir. 2000)).   Every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause, and word is to be given effect if reasonable and possible.   *Perkins v. State*, 367 S.W.2d 140 (Tex. 1963).   The interpretation that the statutory good faith defense displaces the defense of estoppel would render the explicit

inclusion of estoppel as a defense in section 24.011 meaningless, and every word of a statute is presumed to have been used for a purpose.   Accordingly, the court will not employ this interpretation.   The court finds that the defense of estoppel is therefore applicable.   The court notes, however, that the doctrine of estoppel has its own limitations.   Estoppel, for example, can be invoked against a party only when the party has failed to do what was his or her duty to do and is not available against a party who had no duty.   *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170 (Tex. 1995).   This issue is dependent upon the facts that will be more fully developed at trial.

The court now turns to whether estoppel was sufficiently pleaded.   Plaintiffs' Motion to Exclude Evidence asserted that the court should exclude Defendant's affirmative defense of quasi-estoppel.   Pls.' Mot. to Exclude Evidence at 7-8.   Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *Lopez v. Munoz, Hockema & Reed*, 22 S.W.3d 857, 864 (Tex. 2000).   It applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which that person acquiesced, or from which he or she accepted a benefit.   *Id.*   Defendants did not plead the affirmative defense of quasi-estoppel.   *See* Def.'s Answer at 16, ¶ 129(e).   Federal Rule of Civil Procedure 8(c) requires any matter constituting an affirmative defense to be set forth in a defendant's responsive pleading; failure to follow this rule generally results in a waiver.   *Giles v. GE*, 245 F.3d 474, 492 (5th Cir. 2001) (citing *Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855 (5th Cir. 1983)).   *Id.*   Where the matter is raised in the trial court in a manner that does not result in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is not fatal.   *Id.*   The court does not find, and Defendant did not assert, where the defense of quasi-estoppel was sufficiently raised in any other manner so as to prevent unfair surprise to Plaintiffs.   Accordingly, the court **will strike** this affirmative defense.

**Order- Page 18**

With respect to the affirmative defense of equitable estoppel, Plaintiffs assert that Defendants failed to plead any of the elements.   Though conclusory, the court finds that Defendant pleaded the defense of equitable estoppel.   *See* Answer at 16, ¶ 129(e).   Further, the court determines that the affirmative defense was raised in the trial court in a manner that does not result in unfair surprise.   In Defendant's Motion for Summary Judgment, Worthington sets out in detail the elements of its equitable estoppel defense. Defendant asserted: (1) GECC's employees falsely attested that they reviewed external documents to support the wire transfers at issue in this litigation; (2) that GECC's employees knew they had not reviewed the underlying documentation supporting the transfers; (3) that these individuals knew their approval would be acted upon by Worthington (because the transfer documentation included the words "Payoff on Loan"); (4) that Worthington had no way of knowing GECC employees had not reviewed the underlying information supporting the transfer or that the transfer was fraudulent; and (5) that Worthington accepted the transfers, released the collateral certificate of deposit, and closed the accounts in reliance on the fact that GECC had made a legitimate payment to Wright & Wright.   Def.'s Br. in Supp. of Mot. Summ. J. at 22.

Defendant filed its motion for summary judgment on July 26, 2010.   Plaintiffs responded extensively to Defendant's estoppel defense asserting "substantial disputed issues of material fact" precluding summary judgment.   Pls.' Resp. to Def.'s Mot. Summ. J. at 28-30.   Plaintiffs' response was filed September 9, 2010.   The discovery period closed December 3, 2010. Amended Scheduling Order at 4.   Discovery had not ended at the time Plaintiffs' response was filed, and Plaintiffs could have sought additional discovery on this issue if they did not believe they were aware of the basis of such affirmative defense.   The court cannot say that Plaintiffs were victims of unfair surprise with respect to this affirmative defense.

**Order- Page 19**

Based upon the foregoing reasons, the court determines that the defense of equitable estoppel is applicable and that Plaintiffs are not legally prejudiced by Worthington's assertion of this affirmative defense.   The court therefore **will not strike** the affirmative defense of equitable estoppel.

## II.      Motions in Limine

The court now considers Plaintiffs' Motion in Limine, filed March 21, 2011.   In the event the court does not grant Plaintiffs' Motion to Exclude Evidence, GECC requests, in the alternative, that the court enter an order restricting counsel and witnesses from mentioning or referring to certain matters in the presence of the jury.

### A.      Plaintiffs' Motion in Limine

#### 1.      All evidence, statements, or arguments regarding events at GECC after July 9, 2008.

GECC requests that the court exclude all evidence, statements, or arguments regarding events at GECC after July 9, 2008.   The parties established that the last wire transfer of the three transfers made from GECC to Wright & Wright was made on July 9, 2008.   On that same date, Worthington applied the funds transferred to Wright & Wright's account to pay off the line of credit at issue.   GECC contends that events occurring after July 9, 2008, are irrelevant.   Worthington asserts that, after the transfers at issue were effected, GECC conducted a significant investigation of the fraud that revealed wrongdoing by Plaintiffs, and evidence from this investigation is relevant. The court determines that, because the last date on which any of the transfers at issue in this litigation occurred was July 9, 2008, conduct after such date is irrelevant or otherwise unduly prejudicial.   The court therefore **grants** Plaintiffs' Motion in Limine as to this item, subject to the qualifications herein specified.

The court recognizes that GECC's investigation postdated the transfers. The parties, however, may introduce evidence generated after July 9, 2008, such as deposition testimony given after July 9, 2008, but such evidence is confined to or must relate back to events, conduct, or policies occurring or existing on or before July 9, 2008.

The court finds that evidence relating to events or conduct *before* the transfers at issue, is relevant to Defendant's good faith.[6]   The court, however, determines that evidence related to events or conduct *before* the transfers at issue *must be connected with the transfers or accounts at issue*.   To the extent the parties desire to mention, seek testimony on, or admit evidence on any item outside of the scope herein specified, the parties must first approach the bench, outside the presence and hearing of the jury, and obtain permission of the court.

### 2.      Evidence Regarding GECC's Booking of the Wire Transfers

Plaintiffs seek to exclude all evidence, statements, or arguments regarding GECC's "booking" of the wire transfers involving Wright & Wright.   "Booking" involves imputing the underlying assets into a computer program.   Plaintiffs contend that such evidence is irrelevant because it occurred after the relevant transfers and would only confuse or inflame the jury. Defendant asserts that such evidence is relevant because GECC's policy required booking to occur before the transfers were made.   Defendant contends that had Plaintiffs followed their "booking" procedure, the fraud in question would have been prevented.

The court finds that its determination in section II(A)(1), setting forth the scope of the evidence it will allow, applies here.   The court therefore **grants** Plaintiffs' Motion in Limine as to this item, subject to the qualifications herein specified.

---

[6] The TUFTA good faith defense raised by Defendant requires a showing of good faith and reasonably equivalent value. *See* Tex. Bus. & Com. Code § 24.009(a).

**Order- Page 21**

### 3.      Evidence Regarding GECC's Alleged Termination of William Schultz

Plaintiffs seek to exclude all evidence, statements, or arguments regarding GECC's alleged termination of William Schultz.   Plaintiffs contend that Schultz's termination is not relevant and even if it is relevant, constitutes a subsequent remedial measure and should be excluded.   Schultz was Prather's supervisor.   Defendant states that evidence surrounding Schultz's termination will be used only to impeach Schultz, if necessary, with a prior inconsistent statement.   Specifically, the statement Worthington seeks to use to impeach the witness is an Equal Employment Opportunity Commission ("EEOC") charge of discrimination sworn to by Schultz.   The court, however, has concerns regarding the undue weight the jury may attach to this evidence and the reliability of the assertions therein.   Accordingly, the court **grants** Plaintiffs' Motion in Limine as to this item.   To the extent the parties desire to mention, seek testimony on, or admit evidence on concerning this item, the parties must first approach the bench, outside the presence and hearing of the jury, and obtain permission of the court.

### 4.      Evidence Regarding GECC's Reprimand of Steven Wright and Jim Roberts

Plaintiffs seek to exclude all evidence, statements, or arguments regarding GECC's alleged reprimand of Wright and Roberts.   Plaintiffs contend that both reprimands constitute inadmissible subsequent remedial measures and should be excluded pursuant to Federal Rule of Evidence 407. Defendant states that letters of reprimand do not constitute a subsequent remedial measure.   The court notes that a reprimand does not rise to the level of discharge, which is generally considered a subsequent remedial measure.   *See Kerr-McGee Corp. v. Ma-Ju Marine Servs., Inc.*, 830 F.2d 1332, 1344 n.14 (5th Cir. 1987) (quoting 10 *Moore's Federal Practice* § 407.03 at IV-154) ("Relevancy and policy considerations provide the rationale for the exclusion of evidence of

subsequent remedial measures. These are measures 'which, if taken previously, would have made the event less likely to occur.' These will include measures as diverse as the activities of man. For example, discharge of the employee responsible for the accident, subsequent repair, change in operational procedures or rules, installation of a safety device, subsequent design change, elimination of a hazardous condition.").   Although a reprimand is not as severe as a discharge, it is nevertheless disciplinary action, and the court determines it can reasonably be stated that a reprimand is a measure, which, if taken previously, would have made the event less likely to occur. Accordingly, the court **grants** Plaintiffs' Motion in Limine as to this item.   To the extent the parties desire to mention, seek testimony on, or admit evidence on concerning this item, the parties must first approach the bench, outside the presence and hearing of the jury, and obtain permission of the court.

### 5.      Evidence Regarding Policy Changes Implemented by GECC After Discovering Prather's Fraud

Plaintiffs seek to exclude all evidence, statements, or arguments regarding policy changes related to the issuance and approval of wire transfer requests, implemented by GECC after discovering Prather's fraud.   Plaintiffs contend that this constitutes a subsequent remedial measure and should be excluded pursuant to Rule 407.   During the pretrial hearing, the parties agreed to first approach the bench, outside the presence and hearing of the jury, and obtain permission of the court before mentioning, seeking testimony on, or admitting evidence concerning this item. Accordingly, the court **grants** Plaintiffs' Motion in Limine as to this item.

### 6.      Evidence Regarding GECC's Settlements with Third Parties and Former Defendants in this Suit

Plaintiffs seek to exclude all evidence, statements, or arguments regarding GECC's settlements with third parties and former Defendants in this suit.   Plaintiffs contend that such

evidence would confuse the jury and prejudice GECC.  Plaintiffs' counsel agreed during the pretrial hearing to stipulate to the dates and amount of every settlement.  Pretrial Hr'g Tr. 136:10-1; 138:1-2.  The parties further agreed that the issues or facts concerning settlement would not go to the jury and would be handled by the court for purposes of determining any credit or setoff.  Accordingly, the court **denies as moot** Plaintiffs' Motion in Limine as to this item.

### 7.        Evidence Regarding GECC's Investigation of Prather's Fraud

Plaintiffs seek to exclude all evidence, statements, and arguments regarding GECC's investigation of Prather's fraud.  Plaintiffs contend that beginning in the fall of 2008 and continuing into the spring of 2009, GECC investigated wire transfers that were made to Wright & Wright.  Plaintiffs contend that because the investigation occurred months after the transfers at issue in this suit, the investigation is irrelevant.  Defendant asserts Plaintiffs' investigation of the fraud is relevant to its affirmative defenses.  The court finds that its determination in section II(A)(1), setting forth the scope of the evidence it will allow, also applies here. The court therefore **grants** Plaintiffs' Motion in Limine as to this item, subject to the qualifications herein specified.

### 8.        Evidence Regarding Southwest Equipment Company

Plaintiffs seek to exclude all evidence, statements, and arguments regarding Southwest Equipment Company ("Southwest").  Plaintiffs contend that Southwest Equipment Company was a fictitious company that Prather purported to operate and for which Prather solicited investments in furtherance of the Ponzi scheme he operated.  Plaintiffs assert Southwest is not a part of the scheme Prather perpetrated on GECC and is not mentioned in Plaintiffs' live pleading.  Plaintiffs contend that evidence relating to Southwest Equipment Company is irrelevant to this lawsuit and would only confuse the jury.  Defendant states that such evidence is admissible because Plaintiffs produced a number of documents relating to the purchase and sale of millions of dollars of

equipment under the name Southwest Equipment Company.   Defendant contends that the documents were created on Plaintiffs' computers and named several of Plaintiffs' employees, including Justin Prather, as involved in these business transactions.   Defendant contends this evidence is probative as to Plaintiffs' employees' involvement in Prather's fraud, which is relevant to Worthington's affirmative defenses.

During the pretrial hearing Plaintiffs asserted that all transactions relating to Southwest occurred after July 2008.   The court finds that its determination in section II(A)(1), setting forth the scope of the evidence it will allow, also applies here. The court therefore **grants** Plaintiffs' Motion in Limine as to this item, subject to the qualifications herein specified.

### B.     Defendant's Motion in Limine

The court now turns to Defendant's Motion in Limine, filed March 21, 2011.   Worthington requests that the court enter an order restricting counsel and witnesses from mentioning certain matters in the presence of the jury.

### 1.     Any reference to Worthington's investigation of or conduct relating to transactions or wire transfers other than the three transfers from Wright & Wright to Worthington National Bank

Defendant requests that Plaintiffs be prohibited from making any reference to Worthington's investigation of or conduct relating to transactions or wire transfers other than the three transfers from Wright & Wright to Worthington for which Plaintiffs seek recovery. Defendant contends that reference to the investigation of or conduct relating to other transactions is unfairly prejudicial and will confuse the jury.   Plaintiffs contend that Worthington's issuance of a loan to Wright & Wright, its investigation of the account activity, and its decision to close the account are all relevant and probative under the objective good faith standard.

The court finds that events and conduct occurring before the transfers are probative of the good faith issue.   The parties established during the pretrial conference that three accounts were opened in connection with the $2.5 million line of credit extended to Wright & Wright by Worthington.   The court has analyzed the applicable case law, and the court finds that the activity of these three accounts is probative of what Worthington knew or should have known.   This court has established that the "good faith" prong of section 24.009(a) of TUFTA must be analyzed under an objective, rather than subjective, standard, and the relevant inquiry is what the transferee objectively knew or should have known.

The court finds that its determination in section II(A)(1), setting forth the scope of the evidence it will allow, also applies here. The court therefore **denies** Defendant's Motion in Limine as to this item, subject to the qualifications herein specified.

> **2.     Any reference to, or introduction of, documents which Plaintiffs designated as exhibits in their trial exhibit list but which were not produced to Worthington in this case.**

Defendant requests that any reference to, or introduction of, documents which Plaintiffs designated as exhibits in their trial list but which were not produced to Worthington in this case should be excluded.   At the time of the pretrial hearing, Defendants listed the exhibits at issue as Plaintiffs' Exhibits 1, 2, 3, and 153-157.   Plaintiffs state that Worthington has either been given or had easy access to the documents of which it complains.   After reviewing the record and each exhibit, the court determines the exhibits are either publicly available or were included in Plaintiffs' Appendix in Response to Defendant's Motion for Summary Judgment.   Accordingly, the court finds that Defendant suffers no legal harm at trial if GECC is allowed to introduce these documents. The court therefore **denies** Defendant's Motion in Limine as to this item.

**Order- Page 26**

3.      **Any reference to, or the introduction of, any document, admission, statement or evidence arising from the criminal case styled *United States of America v. Justin Laurin Prather*, Cause No. 3-10CR0218-D.**

Defendant requests that any reference to, or the introduction of, any document, admission, statement or evidence arising from the criminal case styled, *United States of America v. Prather*, Case No. 3:10-cr-218-D, be excluded.   Defendant contends that reference to that case is irrelevant and unfairly prejudicial, will confuse the issues, and potentially mislead the jury.   Plaintiffs state that such evidence is relevant because to prevail on its TUFTA claim, it must prove that Prather, operating through Wright & Wright, acted with fraudulent intent.

Having reviewed the record of the case, *United States of America v. Prather,* the court determines that documents relating to this case are probative of fraudulent intent but also prejudicial.   For example, the Information delineates several transfers that are not relevant to this case, as they take place well after those of July 2008 and relate to other banks.   The court therefore **grants** Defendant's Motion in Limine as to this item.   To the extent the parties desire to mention, seek testimony on, or admit evidence on concerning this item, the parties must first approach the bench, outside the presence and hearing of the jury, and obtain permission of the court.   Further, to the extent the parties seek to admit evidence concerning this item, the parties must **redact** the evidence to reflect only the three wire transfers or loan payoff at issue and the accounts at issue.

4.      **Any reference to the "good faith" standard under the Texas Uniform Fraudulent Transfer Act as meaning anything other than accepting a transfer "without a secret agreement to benefit the grantor in some way other than by discharge of his debt."**

Defendant requests to exclude any reference to the "good faith" standard under TUFTA as meaning anything other than accepting a transfer "without secret agreement to benefit the grantor in

**Order- Page 27**

some way other than by discharge of his debt." Plaintiffs state that the court should deny the motion because Defendant ignores this court's previous ruling on the proper definition of good faith. The court agrees. The court recognizes Defendant's effort to preserve its objection to the definition of good faith employed by the court. Defendant's request, however, ignores the court's January 13, 2011 summary judgment order holding that the objective standard of good faith applies in this case. Under, the objective standard of good faith, the proper inquiry is whether Worthington accepted the transfers without knowledge of facts that would excite the suspicions of a person of ordinary prudence and put him on inquiry of the fraudulent nature of an alleged transfer. The court therefore **denies** Defendant's Motion in Limine as to this item.

> **5.**        **Any reference to, or the introduction of evidence tending to prove that Worthington "should have known" of the fraudulent nature of the three transfers in question.**

Defendant requests to exclude any reference to, or the introduction of evidence tending to prove that Worthington "should have known" of the fraudulent nature of the three transfers in question. Plaintiffs state that the court should deny the motion on this point because Defendant ignores this court's previous ruling on the proper definition of good faith. The court recognizes Defendant's effort to preserve its objection to the definition of good faith employed by the court. Defendant's request, however, ignores the court's January 13, 2011 summary judgment order holding that the objective standard of good faith applies in this case. The court therefore **denies** Defendant's Motion in Limine as to this item.

## III.    Conclusion

For the reasons herein stated, the court **denies** that portion of Plaintiffs' Motion to Exclude Evidence and Motion in Limine that constitutes Plaintiffs' Motion to Exclude Evidence. The court *sua sponte* **strikes** Defendant's affirmative defenses of mitigation of damages, laches, and

**Order- Page 28**

quasi-estoppel. The court **does not strike** Defendant's affirmative defenses of unclean hands and equitable estoppel.

The court **grants** Plaintiffs' Motion in Limine as to items (1) through (5), (7), and (8), and **denies as moot** item (6), subject to the qualifications herein stated.   The court **denies** Defendant's Motion in Limine as to items (1), (2), (4), and (5), and **grants** the motion as to item (3), subject to the qualifications herein stated.   To the extent that the court has granted the parties' respective motions in limine, the parties or their counsel may not mention, refer to, allude to, seek testimony on, or admit evidence on any item granted without first approaching the bench, outside the presence and hearing of the jury, and obtaining permission of the court.   The court will admit into evidence, in accordance with this order, those items that are relevant.

*As a final matter, the court **orders** that the parties file by October 24, 2011, 5:00 p.m., a joint document that lists the exhibits to which they have agreed there will be no objection regarding admissibility at trial.*

**It is so ordered** this 21st day of October, 2011.

Sam A. Lindsay
United States District Judge

**Order- Page 29**