IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **GE CAPITAL COMMERCIAL, INC.,** | § | |
| **et al.,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:09-CV-572-L** |
| | § | |
| **WORTHINGTON NATIONAL BANK,** | § | |
| | § | |
| Defendant. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court are Plaintiffs' Motion for Entry of Judgment (Doc. 302), filed November 10, 2011; Defendant's Letter Regarding Proposed Final Judgment, filed November 10, 2011 (Doc. 303); Plaintiffs' Motion for Attorney's Fees (Doc. 316), filed December 5, 2011; [Defendant] Worthington National Bank's Motion for a Mistrial (Doc. 322), filed December 15, 2011; and Defendant Worthington National Bank's Brief in Support of Its Entitlement to a Settlement Credit (Doc. 336), filed April 10, 2012. After carefully considering the motions, briefs, responses, replies, record, and applicable law, the court **denies** [Defendant] Worthington National Bank's Motion for a Mistrial (Doc. 322), **grants** Plaintiffs' Motion for Attorney's Fees (Doc. 316), and **grants** Plaintiffs' Motion for Entry of Judgment (Doc. 302).

**I.       Factual and Procedural Background**

Plaintiffs GE Capital Commercial, Inc., General Electric Capital Corporation, and GE Capital Financial, Inc. (collectively, the "GE Plaintiffs" or "Plaintiffs") and Defendant Worthington National Bank ("Worthington" or "Defendant") are the only remaining parties in this action. Prior to trial, the only substantive claim remaining was the GE Plaintiffs' claim for

violations of the Texas Fraudulent Transfer Act ("TUFTA").   Justin Prather ("Prather") is a former employee of CitiCapital Commercial Corporation.   Prather was dismissed as a defendant in this lawsuit prior to trial.   GE Capital Commercial, Inc. is the "successor-in-interest" to CitiCapital Commercial Corporation.   Plaintiffs contended that Prather used his purported business, Wright & Wright, Inc. ("Wright & Wright"), to carry out a fraudulent scheme.   Defendant Worthington extended a line of credit to Wright & Wright in the amount of $2,500,000.   Wright & Wright also maintained a checking account at Worthington.   Plaintiffs contended that Prather or Wright & Wright made fraudulent representations to them, thereby causing them to transfer $2,471,330 to Wright & Wright's checking account at Worthington.   Specifically, CitiCapital Commercial Corporation wired the money to Wright & Wright's checking account at Worthington in three installments: July 3, 2008, in the amount of $732,500; July 8, 2008, in the amount of $807,130; and July 9, 2008, in the amount of $931,700.   The deposited funds were then applied to pay off the $2,500,000 line of credit extended to Wright & Wright by Worthington.   Plaintiffs alleged that Worthington accepted these transfers paying down the line of credit in violation of TUFTA.   Worthington countered that it accepted the alleged fraudulent transfers in good faith and for reasonably equivalent value ("statutory affirmative defense").   Worthington also asserted several equitable affirmative defenses.   A trial on the merits of this case commenced on October 25, 2011, and concluded on November 2, 2011.   The jury rendered its verdict on November 3, 2011, and found that the GE Plaintiffs proved their claim for violations of TUFTA and that Worthington did not prove its statutory or equitable affirmative defenses.

Prior to trial, a pretrial conference was held on October 11, 2011, during which the court heard argument on the parties' motions in limine and resolved a number of outstanding issues. During the pretrial conference, the parties agreed to stipulate to the dates and amounts of every

settlement related to this case.   The parties further agreed that the issues or facts concerning settlement would not go to the jury and would be handled by the court (postverdict) for purposes of determining any credit or setoff.   Accordingly, in its memorandum opinion and order of October 20, 2011, issued after the pretrial conference in this case but before trial, the court denied as moot Plaintiffs' motion in limine with respect to request six, which sought to exclude all evidence, statements, or arguments regarding the GE Plaintiffs' settlements with third parties and former defendants in this suit.

In its order of November 3, 2011, the court directed the parties to confer and submit a proposed judgment or separately set forth their versions of what should be included in the judgment by November 10, 2011.   On November 28, 2011, the court conducted a telephone conference to discuss outstanding issues in this case; the same day, the court ordered briefing on the issues of setoff and attorney's fees and also instructed Plaintiffs to provide Defendant a copy of each settlement agreement pertaining to this case.   In Worthington National Bank's Reply in Support of its Emergency Motion Seeking Compliance with the Court's November 28, 2011 Order ("Emergency Motion"), filed December 5, 2011, Defendant requested that the court declare a mistrial because two documents produced by Plaintiffs in response to this court's November 28, 2011 order purportedly demonstrated that Plaintiffs lacked standing to prosecute this action.   The court, in its order of December 7, 2011, declined to consider Defendant's request for relief raised for the first time in its reply brief.   The court instructed Defendant, to the extent it intended to move for a mistrial, to seek such relief by a formal motion.   Thereafter, on December 15, 2011, Defendant filed Worthington National Bank's Motion for Mistrial ("Motion for Mistrial").   After further briefing, the court held a hearing regarding the pending motions on April 25, 2012.   The court now renders its opinion.

**Memorandum Opinion and Order- Page 3**

## II.    Analysis

### A.   Worthington National Bank's Motion for a Mistrial

In its Motion for Mistrial, Defendant argues that Plaintiffs failed to timely produce critical documents, including a Settlement Agreement between certain CitiCapital entities ("Citi") and the GE Plaintiffs ("Settlement Agreement") and certain documents and correspondence therein referenced.   These documents include a "Notice of Claim and Demand" ("Notice and Demand") from the GE Plaintiffs to Citi and a letter from the general counsel of Citi responding to the GE Plaintiffs' claims.   Defendant asserts that the Settlement Agreement and associated communications prove that the GE Plaintiffs have been fully compensated for the damages they seek from Worthington and that the GE Plaintiffs never had standing to prosecute this action. Worthington asserts that there was no basis under TUFTA for Plaintiffs to bring their claim because, pursuant to the Settlement Agreement, Plaintiffs were fully indemnified for their claim. Plaintiffs respond that the issues of standing and offset are issues for the court to decide and not the jury.   Plaintiffs argue that Worthington has no standing to enforce the Settlement Agreement or rely on its terms; that the Settlement Agreement did not release Plaintiffs' claims against Worthington; that Plaintiffs complied with all discovery requests and this court's orders; and that the Motion for Mistrial is untimely.   Worthington counters that the Settlement Agreement and associated documents prove that the GE Plaintiffs were not "creditors" as required by TUFTA, and the documents thus relate to a critical issue of fact that should have been evaluated by the jury.

### 1.   Mechanism of Mistrial

The GE Plaintiffs assert that the court should deny Worthington's Motion for Mistrial because Worthington filed it well after the jury verdict.   The GE Plaintiffs correctly state that a motion for a mistrial must be made during a trial.   A mistrial is: (1) "[a] trial that the judge brings to

an end, without a determination on the merits, because of a procedural error or serious misconduct occurring during the proceedings," or (2) "[a] trial that ends inconclusively because the jury cannot agree on a verdict." Black's Law Dictionary 1093 (9th ed. 2009). By definition, it is clear that a mistrial is declared before the close of trial or before the jury renders its verdict. *See also Arizona v. Washington*, 434 U.S. 497, 506 (1978) (Regarding mistrial in a criminal case: "[T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." (footnote and citation omitted)); *see also* 4-48 *Federal Litigation Guide* § 48.12 (2012) ("Motions in limine and motions during trial, especially motions for mistrial or for judgment as a matter of law, provide a means of preserving issues for appeal."). *See also Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 782 (5th Cir. 1983) (The court noted that the defendant's failure to move for a mistrial was significant. "By doing so [failing to move for mistrial], and by acquiescing in the court's corrective charge, it got a chance to see the verdict and then to seek to overturn it." The court also noted that "a motion for new trial may be served not later than ten days [now 28 days] after the entry of judgment on the jury's verdict. Fed. R. Civ. P. 59(b). By contrast, a motion for mistrial is properly made when the event giving rise to the motion occurs.") The GE Plaintiffs assert that Worthington's procedural remedy, if any, was a motion for new trial, pursuant to Rules 50(b) or 59(b) of the Federal Rules of Civil Procedure.

While Defendant's motion is labeled as one for mistrial, the court does not limit itself to labeling or nomenclature. If the court limited itself to labels or titles of motions, it would often exalt form over substance. The better practice, which is in the interest of justice, is to look at or examine the substance and the effect of the motion. Although Defendant's motion seeks a

mistrial, the crux of the motion is that the GE Plaintiffs have no standing or have been made whole. Standing is inextricably intertwined with jurisdiction.   Accordingly, the court will review the motion regardless of its nomenclature.   Moreover, when it comes to jurisdiction, the court has an obligation and duty to examine its jurisdiction.   A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case.   *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level.") (citations omitted); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("[A]ny federal court may raise subject matter jurisdiction *sua sponte*") (citations omitted).

### 2.   Jurisdiction

Jurisdictional questions are questions of law.   *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000).   "A question of standing raises the issue of whether the plaintiff is entitled to have the court decide the merits of the dispute or of particular issues. Standing is a jurisdictional requirement that focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated."   *Pederson*, 213 F.3d at 869 (citation omitted).   As a general rule, standing must exist at the time an action is filed.   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.4 (1992); *Pederson*, 213 F.3d at 870.   This court has recognized that there is a necessary corollary to the rule, in that it does not apply to later-added parties.   *GE Capital Commercial Inc. v. Worthington Nat. Bank*, 2011 WL 3156076, at *11 (N.D. Tex. July 25, 2011).   Thus, the true scope of the rule is that standing must exist at the time a lawsuit is filed against a defendant, *or it must exist at the time a defendant is added as a party*.   *Id.*   "To establish constitutional standing, a plaintiff must satisfy three elements.   First, the plaintiff must have suffered an injury in fact . . . an invasion of a legally protected interest which is . . . concrete and

particularized . . . not conjectural or hypothetical." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 769 (5th Cir. 2011) (citation and internal quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct complained of." *Id.* (citation and internal quotation marks omitted). Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* (citation and internal quotation marks omitted).

The doctrine of standing is distinguishable from that of mootness. Mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Pederson*, 213 F.3d at 869 (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). "The mootness doctrine ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit . . . including the pendency of the appeal." *McCorvey v. Hill*, 385 F.3d 846, 848 (5th Cir. 2004) (citation omitted).

"A case should not be declared moot as long as the parties maintain a concrete interest in the outcome and effective relief is available to remedy the effect of the violation." *Environmental Conservation Org. v. City of Dallas*, 529 F.3d 519, 527 (5th Cir. 2008) (citation and internal quotation marks omitted). "A case will become moot where there are no longer adverse parties with sufficient legal interests to maintain the litigation or when the parties lack a legally cognizable interest in the outcome of the litigation." *Id.* (citation and internal quotation marks omitted). "It is not enough that a dispute was very much alive when the suit was filed; . . . the parties must continue to have a personal stake in the outcome of the lawsuit." *Id.* (citation and internal quotation marks omitted)). A case may become moot for several reasons. "One such reason can be an intervening factual event [that] causes the plaintiff to no longer have a present right to be vindicated

or a stake or interest in the outcome." *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998) (citing *Calderon v. Moore*, 518 U.S. 149 (1996)).

In this case, the Settlement Agreement was entered into in November 2009, well after Plaintiffs filed their lawsuit on March 27, 2009, and added Worthington as a party on June 26, 2009. Plaintiffs had standing at the time they sued Worthington.   Thus, the question is an issue of *mootness* rather than *standing*.   Pursuant to TUFTA, a creditor may obtain: (1) avoidance of the transfer; (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee; or (3), an injunction against further disposition by the debtor or transferee, appointment of a receiver to take charge of the asset transferred, or any other relief the circumstances may require.   Tex. Bus. & Com. Code § 24.008 (West 2009).    "[T]o the extent a transfer is voidable in an action by a creditor . . . the creditor may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less. Tex. Bus. & Com. Code § 24.009(b).   The GE Plaintiffs sought to avoid the transfers, obtain permanent injunctive relief, and obtain damages.   Pls.' Second. Am. Compl. ¶ 45.   Whether the GE Plaintiffs' claim is moot depends on whether an intervening event, namely, the Settlement Agreement, divested the Plaintiffs of a legally cognizable interest in the outcome of the litigation.

Assuming at this juncture that the court can interpret the Settlement Agreement, Defendant asserts that Plaintiffs lack standing as a result of paragraph 8 of the agreement, which arguably prevents Plaintiffs from "seek[ing] recovery of damages" in this lawsuit.   Paragraph 8 only conceivably limits damages; it does not limit injunctive relief or any other type of relief allowed under TUFTA.   Thus, even assuming the Settlement Agreement prevents Plaintiffs from pursuing damages, it does not divest Plaintiffs of all legally cognizable interest in the outcome of the litigation, as Plaintiffs would still be able to pursue injunctive relief.   Plaintiffs' claims are not

moot because their interest in equitable relief demonstrates that they have a personal stake in the outcome of the lawsuit.   Accordingly, this court has jurisdiction to resolve this lawsuit.

### 3.   Production of Documents and Applicability of TUFTA

Defendant Worthington and the GE Plaintiffs dispute whether the Settlement Agreement and related correspondence (collectively, the "Citi Documents") were requested during the discovery period.   Defendant asserts that these critical documents were requested; that Plaintiffs stated they produced all documents responsive to such requests; and that Plaintiffs failed to produce the documents.   Plaintiffs argue that Worthington never requested the Citi Documents during the discovery period and waived any right to complain about discovery because it did not file a motion to compel the Citi Documents.   The GE Plaintiffs also assert that that they complied with all discovery requests and each of the court's orders regarding production of documents.

The court need not wade into the parties' dispute regarding the production of the Citi Documents and will not entertain any argument regarding any alleged hidden agenda by Plaintiffs to conceal these documents prior to trial.   For the reasons that follow, the court determines that the time to raise issues concerning the production of the Citi Documents has long passed, and Worthington has waived its right to do so.   In Plaintiffs' Motion to Exclude Evidence and Motion in Limine, filed March 21, 2011, Plaintiffs sought to exclude all evidence, statements, or arguments regarding their settlements with third parties and any former defendants in the lawsuit.   The motion stated:

> GECC [the GE Plaintiffs] has settled its claims with former defendants BBAF Enterprises, Inc., Frank Buchanan III, PlainsCapital Bank, Sterling Bank, Texana Bank, Wright & Wright, and David Ashley Wright.   *GECC has also settled claims that it had against third parties, including claims against CitiCapital Commercial Corporation* and against certain investors in Prather's alleged Ponzi scheme who were paid returns with money stolen from GECC.

Pls.' Motion in Limine 14 (emphasis added).  Defendant now asserts: "[t]he GE Plaintiffs' conscious withholding of these critical documents, and their misrepresentations regarding the terms of the settlements, severely prejudiced Worthington, caused unnecessary protracted litigation, and burdened the Court and the judicial system."  Def.'s Mot. for Mistrial 11.  Defendant urged, for the first time in its reply brief, that the Citi Documents prove that the GE Plaintiffs cannot establish the elements of TUFTA.  Def.'s Reply in Supp. of Mot. for Mistrial 4.  According to Defendant, the debt underlying the GE Plaintiffs' claim under TUFTA did not exist.  *Id.*  Defendant further asserts that the jury did not have the opportunity to evaluate the Citi Documents to determine whether Wright & Wright was truly a debtor of the GE Plaintiffs, an essential fact question for the jury, according to Defendants.*

During the pretrial hearing on October 11, 2011, the parties and the court engaged in the following discourse:

> The Court: Your position is that Plaintiffs have accepted settlement funds applied to satisfy at least in part their claim against Worthington.   That is the way I understand the nature of your position as to these settlements with other parties.
>
> Mr. Searcy (Counsel for Defendant): That is correct, Your Honor, and I think that we are entitled to a credit or offset under the express[] language of the Texas Uniform Fraudulent Transfer Act.
>
> The Court: That would be an issue decided by the jury or decided by the Court as to how much you are entitled to [?]
>
> Mr. Searcy: If there is any issue as to how much was paid in the settlement, I suppose that it might be partially a jury issue, but I must concede to the Court I think it is certainly an issue for the Court.
>
> Pretrial Hr'g Tr. 135:15-136:5, Oct. 11, 2011.

---

* In order to prevail on its claim under TUFTA, the GE Plaintiffs had to prove by a preponderance of the evidence that Wright & Wright made a fraudulent transfer(s) to Worthington National Bank.  *See Quilling v. Gilliland*, 2002 WL 373560, at *2 (N.D. Tex. March 6, 2002) ("Ordinarily, the *creditor* must prove that the challenged transfer was made with the intent to defraud") (emphasis added).   A transfer is fraudulent if it is made with "actual intent to hinder, delay, or defraud any *creditor* of the *debtor*." Tex. Bus. & Com. Code § 24.005 (a)(1) (emphasis added).

**Memorandum Opinion and Order- Page 10**

. . . .

Mr. Searcy: Well, [counsel for Plaintiffs] certainly have an advantage over me, Your Honor.   I have not seen the settlement agreements, although I have asked for them.

Mr. Schwegmann (Counsel for Plaintiffs): That is also not true.   We produced the settlement agreements in February or March.

Mr. Mundt (Counsel for Defendant): No, you didn't.

Mr. Schwegmann: Anyway, we would be happy to stipulate to the dates and amounts of the settlements.

Mr. Searcy: Could you give me Bates numbers?

Mr. Schwegmann: We will be glad to do that.

Pretrial Hr'g Tr. 137:19-138:3.

. . . .

The Court: It is my understanding right now[,] there is a willingness to produce or stipulate to the amount of the settlement[s].   If that is the case I think that will obviate the need for us to have some prolonged discussion about the production or nonproduction of the settlement agreements.

Mr. Searcy: Just give me the Bates numbers.

Mr. Schwegmann: We will. Your Honor, is the motion in limine on this issue granted regarding settlement agreements?

The Court: Well, it seems to me that is an issue that should be settled by the Court. If the amounts are stipulated to, and you know[,] normally discussions or issues or facts concerning settlements do not go to the jury because we do not want the jury to prejudge the case or come to the wrong conclusion because of a settlement.   Is not this something that can be handled by the Court? Is not this a legal issue?

Mr. Searcy: I am more than willing for it to be handled by the Court if he has provided me the settlement agreements.

The Court: Well, he said he would do that or stipulate to the amounts.

Mr. Searcy: If I am not ambushed later on by saying I should have taken it to the jury.   I am more than willing for the Court to determine what credit I am entitled to.

**Memorandum Opinion and Order- Page 11**

Mr. Schwegmann: I agree.   I filed a motion in limine and said the jury shouldn't get it at all.

Pretrial Hr'g Tr. 138:18-139:21.

*Defendant was put on notice on March 21, 2011 (at the time Plaintiffs filed their motion in limine) that a settlement agreement between the GE Plaintiffs and its predecessor in interest, CitiCapital Commercial Corporation, existed.*   As evidenced by the colloquy above, Defendant's concern with respect to the settlement agreements was its entitlement to a credit or setoff.   *Defendant expressed no concern that the settlement agreements were needed to determine Plaintiffs' status as a creditor under TUFTA.*   Prior to trial, Defendant did not urge that the documents should be presented to the jury to prove or disprove any element of Plaintiffs' claim under TUFTA, or request the court to delay the start of the trial to examine the documents and determine whether additional discovery or motions were necessary for its defense against Plaintiffs' claim under TUFTA.   Had Worthington filed a motion for additional discovery and to delay the start of the trial, and shown good cause, the court would have granted such motion.   For the foregoing reasons, the court determines that Defendant's argument that the Settlement Agreement proves that the GE Plaintiffs are not creditors or are not entitled to bring a claim under TUFTA has been waived.   Therefore, the court **denies** Worthington's request that the court declare a mistrial.   The court will only consider the Settlement Agreement for purposes of determining whether Worthington is entitled to a credit or setoff.

### 4.   Standards for Contract Interpretation

The GE Plaintiffs argue that Worthington has no standing to enforce the Settlement Agreement or to rely on its terms.   Specifically, the GE Plaintiffs assert that Worthington has no rights under the Settlement Agreement because it was neither a party nor a third party beneficiary to

the agreement.   The GE Plaintiffs argue that nothing in the Citibank documents suggests or implies that Plaintiffs and Citi intended to benefit, compensate or release Worthington, who is not named in the Settlement Agreement.   Worthington responds that it does not seek a mistrial because of any breach by the GE Plaintiffs of their contractual commitment in the Settlement Agreement; rather, it contends that the agreement proves that the GE Plaintiffs were made whole for the damages sought from Worthington.

The Settlement Agreement states that is governed by and shall be construed in accordance with the internal laws of the State of New York.   Settlement Agreement 6, ¶ 15 (Doc. 313, App. 89).   Under New York Law, "[t]he third-party beneficiary concept arises from the notion that it is just and practical to permit the person for whose benefit the contract is made to enforce it against one whose duty it is to pay or perform."   *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 485 N.E.2d 208, 211 (N.Y. 1985) (citation omitted).   The court can interpret the Settlement Agreement because Worthington does not seek to enforce it as a party or third-party beneficiary. Rather, Worthington seeks to demonstrate that the GE Plaintiffs have been made whole by the Settlement Agreement.

### 5.   Collateral Source Rule

The court's jurisdiction in this case is based on the diversity of the parties. The Settlement Agreement is governed by New York law.   As Plaintiffs' substantive claims were brought under Texas law, the determination of a settlement credit is also governed by Texas law.   *See RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 862 (5th Cir. 2010) (applying the substantive insurance law of Texas in a diversity case to interpret the insurance policies, federal principles of judicial estoppel, and Texas law to determine entitlement to a settlement credit).   Also, the parties agree that Texas law governs the determination of any settlement credit.   *See* Def.'s Br. in Support of

Entitlement to Settlement Credit 9 (urging the court to apply Texas's burden-shifting framework for crediting settlement proceeds); Pl.'s Resp. to Def.'s Br. in Support of Entitlement to Settlement Credit 7-9 (arguing that the principles of TUFTA and Texas's one-satisfaction rule preclude Defendant from receiving a settlement credit).

Worthington argues that it is entitled to settlement credit under Section 24.009(b) of TUFTA.   That section provides, "to the extent a transfer is voidable in an action by a creditor under Section 24.008(a)(1) of this code, the creditor may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less."   Tex. Bus. & Com. Code § 24.009(b).   Therefore, Worthington argues that the GE Plaintiffs are only entitled to recover the lesser of the amount actually transferred or the remaining balance owed on the transfers.   Worthington also contends that the GE Plaintiffs' recovery is limited by the Texas common law "one-satisfaction" rule.   "Under the one satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered." *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000) (citation omitted).   "This rule applies when multiple defendants commit the same act as well as when defendants commit technically different acts that result in a single injury." *Id.*   The GE Plaintiffs argue that TUFTA and the one-satisfaction rule do not permit Defendant to receive a settlement credit.   Further, Plaintiffs argue that the "collateral source" rule applies.

The court now turns to the "collateral source" rule.   Notwithstanding the theories urged by Defendant purportedly authorizing a settlement credit, Texas law is clear that such a credit may not originate from a collateral source.   "Long a part of the common law of Texas and other jurisdictions, the [collateral source] rule precludes any reduction in a tortfeasor's liability because of benefits received by the plaintiff from someone else — a collateral source." *Haygood v. De Escabedo*, 356 S.W.3d 390, 394-395 (Tex. 2011) (citations omitted).

**Memorandum Opinion and Order- Page 14**

> The collateral source rule is both a rule of evidence and damages. Generally, it precludes a tortfeasor from obtaining the benefit of, or even mentioning, payments to the injured party *from sources other than the tortfeasor*. In other words, *the defendant is not entitled to present evidence of, or obtain an offset for, funds received by the plaintiff from a collateral source.*

*Johnson v. Dallas County*, 195 S.W.3d 853, 855 (Tex. App.—Dallas 2006, no pet.) (quoting *Taylor v. American Fabritech, Inc.*, 132 S.W.3d 613, 626 (Tex. App.—Houston [14th Dist.] 2004, pet. denied)) (internal citations omitted) (emphasis added).   For instance, insurance payments to or for a plaintiff are not credited to damages awarded against the defendant.   *See Haygood*, 356 S.W.3d at 395, 395 n.26 (quoting *Texas & Pacific Railway Co. v. Levi & Bro.*, 59 Tex. 674, 676 (Tex. 1883) ("The insurer and the defendant are not joint tort[]feasors or joint debtors so as to make the payment or satisfaction by the former operate to the benefit of the latter; nor is there any legal privity between the defendant and the insurer so as to give the former the right to avail itself of a payment by the latter. The policy of insurance is collateral to the remedy against the defendant, and was procured solely by the plaintiff at his expense, and to the procurement of which the defendant was in no way contributory. . . . It cannot be said that the plaintiff took out the policy in the interest or behalf of the defendant, nor is there any legal principle which seems to require that it be ultimately appropriated to the defendant's use and benefit."). "The collateral source rule reflects the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor."

*Haygood*, 356 S.W.3d at 395.

To the extent that Defendant argues it is not a tortfeasor, the court determines that Defendant's argument is frivolous.   A tortfeasor is "[o]ne who commits a tort; a wrongdoer." Black's Law Dictionary 1627 (9th ed. 2009).   *See also Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333 (Tex. 2009).   In *Retamco*, Retamco Operating, Inc. ("ROI"), a Texas

corporation, sued Paradigm Oil, Inc. ("Paradigm"), another Texas corporation, in a Texas district court, over unpaid royalties related to oil and gas interests in several Texas counties. ROI amended its petition to include a claim against Republic Drilling Company ("Republic"), a California corporation, for violation of TUFTA. ROI claimed that during the pendency of the litigation, Paradigm assigned to Republic a 72% interest in Paradigm's oil and gas wells and leases in Fayette County and a 72% interest in an option to acquire an interest in a lease in Dimmit and Webb Counties. ROI alleged that these transfers were fraudulent and that they led to Paradigm's insolvency, rendering it unable to satisfy ROI's claims. The Texas Supreme Court held that the Texas district had jurisdiction over the out-of-state defendant Republic. The court reasoned, in part:

> Republic is alleged to have received transfer of Texas real property from a Texas resident, during the pendency of a Texas suit, for the purpose of defrauding a Texas resident. As a result of this transaction, assets ROI may have recovered from Paradigm are now in the possession of Republic. *These contacts are sufficient to demonstrate that this alleged tort occurred at least, in part, in Texas. See* Tex. Civ. Prac. & Rem. Code § 17.042 ("a nonresident does business in this state if the *nonresident . . . commits a tort* in whole or in part in this state"); *see also In re Tex. Am. Express, Inc.*, 190 S.W.3d 720, 725 (Tex. App.—Dallas, no pet.) (noting that a *fraudulent transfer under the UFTA is a tort*).

*Retamco*, 278 S.W.3d at 341 (emphasis added). Moreover, TUFTA not only creates liability against the person for whose benefit the transfer was made, such as the debtor, but also against the first transferee of the asset, or any subsequent transferee. *Id.* (citing *Trigeant Holdings, Ltd. v. Jones*, 183 S.W.3d 717, 726 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (internal quotation marks omitted)). In the case *sub judice*, the jury found that Worthington accepted fraudulent transfers; failed to prove that it acted in good faith when accepting the transfers; and failed to prove its affirmative defenses of unclean hands or equitable estoppel. (Doc. 299, 10-14). Accordingly, Worthington is liable and is a wrongdoer or tortfeasor.

**Memorandum Opinion and Order- Page 16**

The Settlement Agreement demonstrates that the Citi entities paid the GE Plaintiffs $8,000,000 because:

> The Parties desire[d] to settle, compromise, resolve amicably and discontinue, without any admission of fault or liability, their dispute under PSA [Purchase and Sale Agreement] Section 2.9, Article VIII, or any other provision of the PSA, or otherwise, arising out of, relating to or in connection with the Employee Scheme Matters, the Lawsuit, or both.

Settlement Agreement 2, Recital G.   There is no evidence that Citi, the settling third-party, is a tortfeasor.   "Joint tortfeasors are defined as parties whose tortious conduct combines as a legal cause of a single and indivisible harm to the injured party."   *Gilcrease v. Garlock, Inc.*, 211 S.W.3d 448, 457 (Tex. App.—El Paso 2006, no pet.) (citing *Riley v. Industrial Finance Service Co.*, 302 S.W.2d 652, 655 (Tex. 1957), *overruled on other grounds*, *McMillen v. Klingensmith*, 467 S.W.2d 193, 197 (Tex. 1971); *Landers v. East Texas Salt Water Disposal Co.*, 248 S.W.2d 731, 734 (Tex. 1952).   There is no evidence that Citi engaged in tortious conduct that combined with tortious conduct of another as a legal cause of a single and indivisible harm to the GE Plaintiffs. Rather, the GE Plaintiffs asserted claims against Worthington in this lawsuit because GE Capital Commercial, Inc. is the successor-in-interest to CitiCapital Commercial Corporation's claim against Worthington for accepting the fraudulent transfers at issue in this case.   Moreover, Worthington does not allege that Citi was a joint tortfeasor.   Thus, Citi is a source *other than the tortfeasor* and qualifies as a collateral source.   *See Johnson*, 195 S.W.3d at 855 ("Generally, [the collateral source rule] precludes a tortfeasor from obtaining the benefit of, or even mentioning, payments to the injured party from sources other than the tortfeasor.")   As the court has previously established, Defendant is "not entitled to present evidence of, *or obtain an offset for*, funds received by the plaintiff from a collateral source."   *Johnson*, 195 S.W.3d at 855 (emphasis added).   Thus, Worthington may not obtain an offset for funds received by the GE Plaintiffs from Citi.   The jury

found that Worthington did not accept the transfers in good faith. If this court were to permit Worthington to obtain a credit for the settlement funds the GE Plaintiffs received from Citi, Worthington would retain funds that the jury found it did not accept in good faith. *Such an application would result in a windfall for Worthington and would reward it for conduct that the jury found to be in violation of TUFTA.* "The collateral source rule reflects the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor." *Haygood*, 356 S.W.3d at 395.

### 6. One-Satisfaction Rule

Defendant asserts that the GE Plaintiffs' recovery is limited by the Texas common law one-satisfaction rule. *See* Def.'s Br. in Support of Entitlement to Settlement Credit 8. This rule is inapplicable to the facts of this case. "Under the one satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered." *Crown Life Ins. Co.*, 22 S.W.3d at 390 (citation omitted). "This rule applies when multiple defendants commit the same act as well as when defendants commit technically different acts that result in a single injury." *Id.* "Under the one satisfaction rule, the nonsettling defendant may only claim a credit based on the damages for which all tortfeasors are jointly liable." *Id.* at 391. As previously established by the court, Citi was not a joint tortfeasor, and Citi did not cause the injury for which Worthington has been held liable. Citi was not jointly liable with Worthington for any damages. Moreover, Citi was never named as a Defendant in this lawsuit. Citi is the predecessor-in-interest to the GE Plaintiffs. Because the one-satisfaction rule only permits the nonsettling defendant to claim a credit based on damages for which all tortfeasors are jointly liable, and Citi is not a tortfeasor or jointly liable for damages with Worthington, Worthington may not claim a credit based on the Settlement Agreement under the One-Satisfaction rule.

**Memorandum Opinion and Order- Page 18**

### 7.  Burden-Shifting Framework and Law of Settlement Credits Generally

Worthington urges the court to apply a burden-shifting framework adopted by Texas courts for crediting settlement proceeds.   This burden-shifting approach applies when the party requesting a settlement credit was not a party to the settlement agreement(s) and the settling party's failure to allocate its settlement could lead to a double recovery.   *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 862 (5th Cir. 2010).

In *RSR*, the Fifth Circuit applied the approach and rationale employed by the Texas Supreme Court in *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917 (Tex. 1998).   *See RSR Corp.*, 612 F.3d at 862 ("The [Texas Supreme Court's] primary concerns [in *Ellender*] were the disparity of information and the resulting unfairness inherent in requiring a litigant to bear the burden of allocating the proceeds of a settlement to which it had not been a party.")   *See id.* (citing *McFarland v. Leyh* (*In re Tex. Gen. Petroleum Corp.*), 52 F.3d 1330, 1340 (5th Cir. 1995) (reasoning that a plaintiff that is a party to the settlement agreement is in a better position than a nonsettling defendant to allocate damages in the settlement)).

Under the burden-shifting framework, the burden of proof is on the party claiming the credit "to show that the damages assessed against it have in fact and in actuality been previously covered." *In re Tex. Gen. Petroleum Corp.*, 52 F.3d at 1340 (citations omitted).   "If the nonsettling defendant is not a party to the settlement negotiations, however, he need only show that the plaintiff settled with another party the claim on which the nonsettling defendant is liable."   *Id.* (citations omitted). "The burden then shifts to the plaintiff to offer proof that the settlement does not provide him with a double recovery." *Id.* (citations omitted).   "The best way for a plaintiff to satisfy his burden is to offer as proof the written settlement, which should specifically stipulate the allocation of damages

to each cause of action." *Id.* (citations omitted). "Should the plaintiff satisfy his burden, the ultimate burden of proof belongs to the nonsettling defendant." *Id.*

The law in Texas regarding settlement credits and the burden shifting framework, much like the one-satisfaction rule, contemplate that the nonsettling defendant will claim a credit based on amounts paid by a settling defendant or a party that is jointly liable for the injury sustained by the plaintiff. In each of the cases presented by Defendant for the April 25, 2012 hearing on this matter, there is no instance of anyone receiving a credit based on monies paid by a party that was not a defendant in the suit or a related suit, or not liable for the harm for which the nonsettling defendant was found liable. The court discusses below each case relied on and presented to the court by Worthington at the hearing.

In *Crown Life Insurance Company*, 22 S.W.3d 378, Defendant Casteel sold insurance policies as an independent agent of Crown Life Insurance Company ("Crown"). One of the policies sold by Casteel led to a lawsuit by policyholders **against Casteel and Crown (codefendants)**. Following trial, Crown and the policyholders settled. The court held that Casteel was entitled to a credit for any settlement amount representing joint damages that Crown paid the policyholders. *In Galle, Inc. v. Pool*, 262 S.W.3d 564 (Tex. App.—Austin 2008, pet. denied), Galle, Inc. appealed from the trial court's judgment, awarding Joe and Leslie Pool the sum of $214,400.58, plus prejudgment interest and costs, based on jury findings that Galle, Inc. made a negligent misrepresentation on which the Pools justifiably relied. Galle, Inc. contended that the trial court erred in refusing to apply a $532,000 dollar-for-dollar credit reflecting the amount of the **Pools' settlement with a co-defendant, Allstate Texas Lloyds Company.** The court of appeals concluded that the district court was required to apply the settlement credit.).

In *Goose Creek Consolidated Independent School District of Chambers and Harris Counties, Texas v. Jarrar's Plumbing*, 74 S.W.3d 486 (Tex. App.—Texarkana 2002, no pet.), Goose Creek contracted with Lee Lewis Construction ("Lewis"), as a general contractor, to furnish all necessary labor and materials for construction of three elementary schools.   Lewis entered into a contract with a subcontractor, Jarrar's Plumbing, to perform the plumbing work at the schools. Shortly after occupancy of three new schools, numerous defects were discovered, including a faulty sewer line and other plumbing problems. Goose Creek filed suit against the architects and the general contractor.   Lewis then filed third-party actions against other parties that participated in the design or installation of various defective systems, including Jarrar's Plumbing.   Goose Creek later brought claims directly against Jarrar's Plumbing. Goose Creek **settled with other defendants** between September 2 and December 29, 1999, **for a total of $ 1,901,000**. Jarrar's Plumbing filed an election for a settlement credit and requested a dollar-for-dollar credit for all monies paid in settlement to Goose Creek. Following trial and the jury's verdict, Jarrar's Plumbing filed a Motion for Entry of Judgment requesting that the court apply **a credit of $ 1,901,000** toward the damages found by the jury and enter a take-nothing judgment in Jarrar's Plumbing's favor.

In *Metal Building Components, LP v. Raley*, 2007 WL 74316 (Tex. App.—Austin Jan. 10, 2007), Wayland Raley filed suit against Cecil Scott, individually, and Armor Products, Inc., to obtain money damages for a personal injury suffered during his employment at Armor Feed & Supply, Inc.   As a party with a justiciable interest in the Raley lawsuit, Metal Building Components, LP, ("MBCI") intervened in the proceedings seeking payment for a credit account in default held by Jason Rhodes in the name of CDS Erectors, Inc.   Scott and Armor Products complained that the trial court erred in failing to credit against the judgment $30,000 in settlement proceeds received by MBCI from the Powell Lane Plaza Partnership, Joe Petrocelli, and Mark

McCandless (collectively "the Powell Lane parties').   In 2004, seeking satisfaction of the debt it was owed, MBCI had filed suit against Marc Cook, Mark McCandless, and Joe Petrocelli, individually, as well as the Powell Lane Plaza Partnership, and Austin Refrigeration, Inc. The court held:

> Although the record reflects that MBCI **sued multiple defendants in various proceedings** to collect the amount owed on the CDS Erectors & Rigging line of credit account, it is undisputed that MBCI **suffered only one injury as a result of the Powell Lane parties' failure to pay Rhodes, who in turn failed to pay MBCI**. We agree with Scott and Armor Products that the one satisfaction rule prevents MBCI from recovering twice for a single injury.

*Metal Bldg. Components, LP v. Raley*, 2007 WL 74316, at *19 (emphasis added).

In *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, Eli Ellender worked periodically as an independent contractor millwright at Mobil Oil Corporation's ("Mobil") Beaumont refinery and was exposed to benzene.   He was diagnosed with acute myelogenous leukemia and died in 1989. Ellender's survivors, individually and on behalf of his estate, sued Mobil and other defendants, alleging that exposure to benzene caused Ellender's leukemia and subsequent death. Just before trial, all defendants, except Mobil, agreed to settle. Before the trial court submitted the case to the jury, Mobil elected a dollar-for-dollar settlement credit.   After the jury verdict, the Ellenders **and the settling defendants** executed a settlement agreement. The Ellenders **received $500,000** in exchange for releasing all claims for actual and punitive damages **against the settling defendants**. The agreement did not allocate the settlement amount between actual and punitive damages. Mobil opposed the Ellenders' motion for judgment, arguing that the proposed judgment did not reduce the actual damages award **by the $500,000 settlement amount**. The court went on to hold that "to limit a nonsettling party's dollar-for-dollar settlement credit to an amount representing actual damages, the settling party must tender a valid settlement agreement allocating between actual and punitive

damages to the trial court before judgment. Otherwise, the nonsettling party is entitled to a credit

equaling the entire settlement amount." *Ellender*, 968 S.W.2d at 928.

In *RSR Corporation. v. International Insurance Company*, Quemetco, Inc. ("Quemetco"), a

subsidiary of RSR Corporation ("RSR"), operated a lead smelter on Harbor Island, near Seattle,

Washington.   During that time, Harbor Island suffered substantial environmental damage. The

Environmental Protection Agency ("EPA") filed an action seeking recovery from RSR for the costs

it had expended in cleaning up Harbor Island, as well as recovery for expected future costs.

International Insurance Company ("International") sued RSR Corporation seeking a declaratory

judgment that it had no obligations under four Environmental Impairment Liability policies that

International's predecessor in interest had sold to RSR in 1981. RSR also purchased

Comprehensive General Liability ("CGL") insurance policies from many other insurance

companies that covered multiple sites, including the Harbor Island site. In 1993, RSR sued

fifty-three of its CGL insurance providers in the 71st District Court for the Judicial District of

Harrison County, Texas. In that action, **RSR asserted claims against the CGL insurers** for

refusing to cover environmental cleanup costs and personal injury claims relating to more than

twenty-five sites, including the Harbor Island site. In 2001, several CGL insurers made

International a cross-claim defendant in the Harrison County action and sought contribution.

Between 1993 and 2005, RSR entered into thirty-six separate settlement agreements with its CGL

insurers, from which it received an aggregate payment of $ 76,006,501.   It dismissed the rest of its

CGL insurers from the Harrison County action. It also dismissed International. In the action before

the Fifth Circuit, the court determined that the "other insurance" clause in International's policy

deprived RSR of any right to recover more than it had already obtained from its settlements with the

CGL insurers.

**Memorandum Opinion and Order- Page 23**

Finally, in *In Re Texas General Petroleum Corp.*, 52 F.3d 1330, Appellants Van E. McFarland and McFarland & Tondre appealed the district court's judgment in favor of Appellee Steven A. Leyh, Trustee of the Liquidating Trust of Texas General Petroleum Corp. ("Liquidating Trustee"). Debtor Texas General Petroleum Corporation brought a fraudulent conveyance action against McFarland after the bankruptcy court had confirmed Debtor's Chapter 11 plan of reorganization. The Liquidating Trustee ultimately asserted the action in place of the debtor. The subject of the suit was a $12,210.25 payment made by the debtor to McFarland for legal services performed for a former officer of the debtor's parent company. During the litigation, co-defendant Brice Tondre settled with the Liquidating Trustee for $10,000. The district court credited only $500 of the settlement payment to the judgment. On appeal, McFarland contended **that the settlement of co-defendant** Tondre with the Liquidating Trustee for $ 10,000 should have been applied against the outstanding judgment under principles of joint and several liability.

In reviewing the aforementioned cases, Defendant simply has not presented the court, and the court has not found on its own, any authority permitting Defendant to receive a settlement credit based on monies tendered by a party that was not a defendant in the lawsuit or related suit, or not liable for the harm sustained by the plaintiff.   Accordingly, the court **determines** that Worthington is not entitled to a settlement credit under Texas's burden-shifting framework or law of settlement credits generally.

### 8.  TUFTA

Section 24.009(b) of TUFTA provides, "to the extent a transfer is voidable in an action by a creditor under Section 24.008(a)(1) of this code, the creditor may recover judgment for the value of the asset transferred . . . *or the amount necessary to satisfy the creditor's claim*, whichever is less." Tex. Bus. & Com. Code § 24.009(b) (emphasis added).   "Claim" is broadly defined under TUFTA

as "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Tex. Bus. & Com. Code § 24.002(3). TUFTA provides relief for a right to payment whether legal or equitable. Worthington argues that Section 24.009(b) of TUFTA is consistent with the one-satisfaction rule. Def.'s Br. in Supp. of Settlement Credit. 8 (citing *Metal Bldg. Components, LP v. Raley*, 2007 WL 74316, at *19 n.22 (holding that the one-satisfaction rule "is consistent with section 24.008 of [][T]UFTA, which precludes MBCI from recovering damages in excess of its claim.")) This court, however, has already established that the one-satisfaction rule is inapplicable to the facts and circumstances of this case. Considering the equitable relief provided by TUFTA, the lack of any joint liability between Citi and Worthington, and the broad definition of "claim," as defined by TUFTA, the court determines that Worthington is not entitled to a settlement credit under TUFTA for any amounts received by the GE Plaintiffs from Citi.

### 9.   Credit for Settlements with Other Parties

In addition to a credit based on the Settlement Agreement with Citi, Worthington requests a settlement credit based on settlements with other entities, including BBAF Enterprises, Inc., Frank Buchanan, the Gobles, the Segees, Michael Holsomback, the Loots, Todd Minnis, PlainsCapital Bank, Sterling Bank, Willis Taubert, Texana Bank, and Kyle White. The Gobles, the Segees, Michael Holsomback, the Loots, Todd Minnis, and Kyle White were never parties to this lawsuit. BBAF Enterprises, Inc., Frank Buchanan, PlainsCapital Bank, Sterling Bank, and Texana Bank were all defendants in this lawsuit, but they were responsible for an injury or harm separate than that caused by Worthington. These individuals do not share Worthington's liability for the $2,471,330 transferred to and accepted by Worthington National Bank. Accordingly, Worthington

is not entitled to a settlement credit for any amounts received by the GE Plaintiffs from these other parties.

### 10. Credit for Monies Received from Prather, Wright, and Wright & Wright

#### a. Monies Received from Prather

Worthington requests a settlement credit based on payments, totaling $461,085.07, that Justin Prather has made toward the satisfaction of the Amended Judgment, entered on October 23, 2009, for damages in the amount of $12,502,859.28.   It is fundamental that the law of "settlement credits" permits the nonsettling defendant to receive a settlement credit for monies paid by a "settling person."   *See Crown Life Ins. Co.*, 22 S.W.3d at 391 (quoting *Hill v. Budget Fin. & Thrift Co.*, 383 S.W.2d 79, 81 (Tex. Civ. App.—Dallas 1964, no writ) ("[A] plaintiff must only give credit to a nonsettling defendant for that part of the damages . . . received from *settling defendants* that are applicable to all equally.") (emphasis added).   In *Crown Life Insurance Company*, the court held that codefendant Casteel was entitled to a credit for any settlement amount representing joint damages that defendant Crown Life Insurance Company paid the policyholders.   *Id.* at 392. Justin Prather is not a settling party.   The court finds Section 33.011 of the Texas Proportionate Responsibility Statute instructive here.   The statute defines "settling person" as "a person who has, at any time, paid or promised to pay money or anything of monetary value to a claimant in consideration of potential liability with respect to the personal injury, property damage, death, or other harm for which recovery of damages is sought."   Tex. Civ. Prac. & Rem. Code Ann. § 33.011(5).   In the case *sub judice*, Justin Prather did not make a payment in consideration of "potential liability."   On October 7, 2009, the GE Plaintiffs and Defendant Justin Prather jointly requested the court to enter a final judgment on all of Plaintiffs' claims against Prather, stating that

Prather no longer wished to dispute liability on Plaintiffs' claims.   On October 20, 2009, the court granted the parties' Joint Unopposed Motion for Entry of Judgment against Defendant Justin Prather and entered a final judgment against Defendant Prather that same day awarding damages to Plaintiffs in the amount $12,502,859.28.   The court entered an amended final judgment on October 23, 2009, modifying the rate for postjudgment interest.

In *MCI Sales & Service, Inc. v. Hinton*, 329 S.W.3d 475, 500 (Tex. 2010), a jury awarded damages to a group of injured motorcoach passengers (or their estates), and their relatives, in their suit against the manufacturer, importer, and distributor of the motorcoach, arising from a motor vehicle accident.   The court determined that the motorcoach owner and the bus driver were "settling persons," pursuant to the former version of Texas Civil Practices and Remedies Code Section 33.0011(5), for purposes of determining proportionate liability.   A "settling person" was similarly defined as "a person who at the time of submission has paid or promised to pay money or anything of monetary value to a claimant at any time in consideration of potential liability . . . with respect to the personal injury, property damage, death, or other harm for which recovery of damages is sought."   *MCI Sales*, 329 S.W.3d at 500 (citation omitted).   Central to the court's analysis was that the motorcoach owner and bus driver paid money in exchange for a release of liability.   *See MCI Sales*, 329 S.W.3d at 501 ("There is no question that the claimants who chose to obtain funds from the Apportionment Plan 'settled' with Central Texas [referring to motorcoach owner and bus driver]—they received money in exchange for a release of Central Texas's liability.")   In the case *sub judice*, Justin Prather did not make a payment in consideration of "potential liability" and was not discharged or released from tort liability. Thus, the court determines that Justin Prather was not a settling party, and Defendant Worthington is not entitled to a settlement credit for monies received by the GE Plaintiffs from Prather in satisfaction of the

judgment entered against him.   Plaintiffs contend that Worthington, as a joint tortfeasor, has a potential right of contribution against Prather. Whether Worthington has a potential right of contribution against Prather is quite beside the point at this juncture, as the court lacks sufficient information to make such determination.

### b.   Monies Received from Wright and Wright & Wright

Worthington requests a settlement credit based on a settlement entered into between Wright & Wright, Inc. and David Ashley Wright ("Wright") and the GE Plaintiffs.   Under the Texas common law burden-shifting framework, the burden of proof is on the party claiming the credit "to show that the damages assessed against it have in fact and in actuality been previously covered." *In re Tex. Gen. Petroleum Corp.*, 52 F.3d at 1340 (citations omitted).   "If the nonsettling defendant is not a party to the settlement negotiations, however, he need only show that the plaintiff settled with another party the claim on which the nonsettling defendant is liable."   *Id.* (citations omitted). "Once the nonsettling defendant demonstrates a right to a settlement credit, the burden shifts to the plaintiff to show that certain amounts should not be credited because of the settlement agreement's allocation."   *Utts v. Short*, 81 S.W.3d 822, 828 (Tex. 2002) (citing *Ellender*, 968 S.W.2d at 928).

Worthington has presented the settlement agreement evidencing a payment from Wright & Wright and Wright to GECC in the amount of $10,000 in consideration for a release of claims made the basis of this lawsuit. (Doc. 337-2, App. 27-34).   Worthington has also demonstrated that Wright & Wright is the entity that was involved in perpetrating the fraudulent transfers to Worthington and that Wright & Wright shares liability for the damages found against Worthington. Accordingly, the court determines that Worthington has met its burden with respect to a settlement credit for monies received by the GE Plaintiffs from Wright and Wright & Wright.

The burden now shifts to the GE Plaintiffs to offer proof that the settlement does not provide them with a double recovery.   In Plaintiffs' Response to Defendant's Brief in Support of its Entitlement to a Settlement Credit, the GE Plaintiffs state that their claims against Wright and Wright & Wright were for fraud, fraudulent transfer, civil conspiracy, and money had and received. Plaintiffs further state that such claims were based on numerous funds transfers over the course of five months, "including funds transferred to Wright and to Wright & Wright's bank accounts from CitiCaptial and GECC and funds transferred from Wright and Wright and Wright's bank accounts to various banks, entities, and individuals."   Pls'. Resp. to Def.'s Br. in Support of Entitlement to Settlement Credit 15.   Plaintiffs further argue that "[e]ach of those funds transfers from CitiCaptial or GECC to Wright or Wright & Wright was for tens of thousands or hundreds of thousands of dollars and each transfer constituted a separate injury to CitiCaptial and later GECC."   *Id.* at 15.

Plaintiffs did not allocate the money received from Wright and Wright & Wright to the transfers for which Worthington is liable or demonstrate that the settlement agreement does not provide a double recovery.   It is "the plaintiff's burden to provide a settlement agreement allocating damages."   *Ellender*, 968 S.W.2d at 928; *Goose Creek*, 74 S.W.3d at 501.   "Because the rationale of the credit is to prohibit a plaintiff from receiving double recovery, if the plaintiff could not meet the burden of proof regarding allocation, then the defendant, having proven the total amount of the settlement, would be entitled to credit for the entire settlement amount." *Goose Creek*, 74 S.W.3d at 501; *see also Ellender*, 968 S.W.2d at 928.   The court determines that Plaintiffs have not met their burden of proof in allocating the damages covered by the settlement agreement with Wright and Wright & Wright.   Accordingly, the court determines that Defendant is entitled to a credit for the entire settlement amount of $10,000.

**Memorandum Opinion and Order- Page 29**

### B. Plaintiffs' Motion for Attorney's Fees

Section 24.013 of TUFTA states, "In any proceeding under this chapter, the court may award costs and reasonable attorney's fees as are equitable and just."   Tex. Bus. & Com. Code § 24.013.   On October 20, 2011, the parties stipulated and agreed that $500,000 is a reasonable and necessary fee for the prevailing party, irrespective of what either party actually incurred.   The GE Plaintiffs prevailed at trial on their affirmative claim for relief under TUFTA and in defeating Worthington's affirmative defenses.   The jury found that Wright & Wright transferred, or caused to be transferred, $2,471,330, to Worthington with the actual intent to hinder, delay, or defraud GE Capital. The jury also found that Worthington did not act in good faith when it accepted the transfers totaling $2,471,330.   The jury rejected Worthington's unclean hands defense and equitable estoppel defense.   Based on section 24.013 of TUFTA, the findings of the jury, and the stipulation of the parties, the court determines that an award of attorney's fees for the GE Plaintiffs in the amount of $500,000 is equitable and just.   Plaintiffs and Defendant have requested additional attorney's fees in their postverdict briefing.   Both sides bear some fault for the morass that has resulted postverdict, and the court thus does not believe additional attorney's fees are warranted under these circumstances.   Accordingly, the court **grants** Plaintiffs' Motion for Attorney's Fees.

### C. Plaintiffs' Motion for Entry of Judgment

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, the court will issue judgment by separate document consistent with its rulings.   "[TUFTA] authorizes both equitable relief—that is, nullification of a fraudulent transfer—and money damages up to the value of the property transferred."   *Wohlstein v. Aliezer*, 321 S.W.3d 765, 776 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing Tex. Bus. & Com. Code §§ 24.008, 24.009(b), (c)).   Accordingly, the court will

**Memorandum Opinion and Order- Page 30**

void the three transfers that occurred on July 3, 8, and 9, 2008, totaling $2,471,330, that paid down the $2,500,000 line of credit extended to Wright & Wright by Worthington.   The court will enter judgment in accordance with the jury's verdict and award the GE Plaintiffs damages in the amount of **$2,461,330**.   This amounts equals damages in the amount of $2,471,330 for the amount of the fraudulent transfers received by Worthington, minus $10,000, the amount of the settlement credit to which the court has determined Worthington is entitled.

The court believes prejudgment interest is appropriate in this case.   "A district court has discretion to impose a pre and post-judgment interest award to make a plaintiff whole."   *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 488 (5th Cir. 2000) (citation omitted).   Prejudgment interest may be awarded in cases involving fraudulent transfers.   *See In re Tex. Gen. Petroleum Corp.,* 52 F.3d at 1339-40 (finding that the bankruptcy court did not abuse its discretion by awarding prejudgment interest in fraudulent transfer case brought pursuant to the Bankruptcy Code); *see generally Williams v. Performance Diesel, Inc.*, 2002 WL 596414, at *5 n.12 (Tex. App.—Houston [14th Dist] 2002, no pet.) (citation omitted) ("Because the [Uniform Fraudulent Transfer Act] and the United States Bankruptcy Code, are of common ancestry, cases under one are considered authoritative under the other.").   The GE Plaintiffs have been damaged and denied the used of the money that was fraudulently transferred to Worthington.   The amount to which the GE Plaintiffs are entitled has been delayed since this suit was filed against Worthington on June 26, 2009. Therefore, the court will award prejudgment interest to compensate Plaintiffs for such delay.

As this is a diversity action, and the GE Plaintiffs' claims against Worthington are Texas state law claims, the court looks to state law to determine the award of prejudgment interest. *Canal Ins. Co. v. First Gen. Ins. Co.*, 901 F.2d 45, 47 (5th Cir. 1990) ("In diversity cases, issues of prejudgment interest are governed by applicable state law.")   Under Texas law, prejudgment

interest may be awarded if either the general principles of equity or an enabling statute permit such an award. *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998). Texas courts have frequently found that equity allows for an award of prejudgment interest in fraudulent transfer cases and have awarded prejudgment interest in such cases. *Floyd v. Option Mortg. Corp. (In re Supplement Spot, LLC)*, 409 B.R. 187, 209 (Bankr. S.D. Tex. 2009) (citing *Lentino v. Cullen Center Bank & Trust*, No. 14-00-00692-CV, 2002 WL 220421, at *1 (Tex. App.—Houston [14th Dist.] Feb. 14, 2002, pet. denied) (mem. op.); *McDill Columbus Corp. v. University Woods Apartments, Inc.*, No. 06-99-00138-CV, 2001 WL 392061, at *3 (Tex. App. —Texarkana Apr. 19, 2001, pet. denied) (unpublished); *Arlitt v. Weston*, No. 04-98-00035-CV, 1999 WL 1097101, at *2 (Tex. App. —San Antonio Dec. 1, 1999, pet. denied).

The court now discusses the calculation of prejudgment interest.

[U]nder Texas law, whether entitlement to prejudgment interest is derived from statute or [ ] equity, prejudgment interest accrues at the rate for postjudgment interest and is computed as simple interest. In relevant part, the applicable statute sets postjudgment interest at either the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation or five percent a year if the prime rate as published by the Board of Governors is less than five percent.

*Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 415 (5th Cir. 2011) (footnote, quotation marks, brackets, ellipses, and citations omitted). The current prime rate is 3.25 percent. Accordingly, the prejudgment interest rate the court will apply is five percent. In Texas, prejudgment interest begins to accrue on the earlier of 180 days after the date the defendant receives written notice of a claim or the day suit is filed. *Primrose Operating Co. v. National Am. Ins. Co.*, 382 F.3d 546, 564 (5th Cir. 2004) (citations omitted). Thus, prejudgment interest will accrue from date the GE Plaintiffs filed their suit against Worthington on June 26, 2009.

**Memorandum Opinion and Order- Page 32**

With respect to an award of postjudgment interest in a diversity case, such interest "is calculated at the federal rate." *Boston Old Colony Ins. Co v. Tiner Assocs.*, 288 F.3d 222, 234 (5th Cir. 2002). Accordingly, postjudgment interest shall accrue at the applicable federal rate, which is currently .19 percent per annum.

## III.   Conclusion

For the reasons herein stated, the court **denies** [Defendant] Worthington National Bank's Motion for a Mistrial (Doc. 322), **grants** Plaintiffs' Motion for Attorney's Fees (Doc. 316), and **grants** Plaintiffs' Motion for Entry of Judgment (Doc. 302). The court **voids** the three transfers totaling $2,471,330, and **awards** Plaintiffs damages in the amount of **$2,461,330**. The court also **awards** Plaintiffs prejudgment interest at the rate of five percent per annum, postjudgment interest at the rate of .19 percent per annum, attorney's fees in the amount of $500,000, and court costs.

**It is so ordered** this 13th day of June, 2012.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order- Page 33**